In re the MARRIAGE OF Beverly Robin ROSENFELD and Martin Sanford Rosenfeld.

Upon the Petition of Beverly Robin Rosenfeld, Appellant,

and

Concerning Martin Sanford Rosenfeld, Appellee.

No. 02–0165.

Supreme Court of Iowa.

Sept. 4, 2003.

Jill Elizabeth Southworth, Springfield, Missouri, for appellant.

Alexander R. Rhoads of Babich, Goldman, Cashatt & Renzo, P.C., Des Moines, for appellee.

STREIT, Justice.

Martin Rosenfeld and Beverly Goode–Kanawati [formerly Beverly Rosenfeld] have been involved in constant litigation since their divorce in 1990. These cases and the appeals have primarily involved their two children. The case before us concerns Rosenfeld's application for a modification of child support and Goode–Kanawati's application for an accounting and delivery of funds. The parties' dispute centers on two groups of funds that were allegedly set aside for the benefit of their children during the marriage. Rosenfeld gifted $25,000 to his daughter under the Uniform Transfer to Minors Act. The parents spent $20,000 for bonds to be used for their son's education. The district court found in the instant case the UTMA funds did not constitute a trust and Rosenfeld, as custodian, had discretion to use the funds for the "support, maintenance, education and benefit" of his daughter. The court found Rosenfeld misappropriated his daughter's UTMA funds and ordered Rosenfeld to restore $20,000. The district court rejected Goode–Kanawati's efforts to increase Rosenfeld's obligation to subsidize his daughter's college expenses and concluded sufficient educational funds remained in her UTMA account to pay for college. As to the son's bonds, the court found they did not constitute a trust and belonged to Rosenfeld. The district court found the law in effect during the original dissolution governs Rosenfeld's obligation to contribute to his son's college expenses. Finally, the court ordered Ro-

senfeld to pay $500 toward Goode–Kanawati's trial attorney fees. Goode–Kanawati appealed and Rosenfeld cross-appealed. The Iowa Court of Appeals affirmed the district court's decision, but ordered Rosenfeld to restore $45,805 to his daughter's UTMA account and to pay $1000 to Goode–Kanawati for her appellate attorney fees. We vacate the court of appeals' decision. We affirm in part the district court's judgment as modified and reverse in part.

I. Background and Facts

Thirteen years have passed since Martin Rosenfeld and Beverly Goode–Kanawati divorced; they are still entangled in litigation. The district court file is now sixteen volumes and the parties have appeared four times before the Iowa Court of Appeals. See In re Marriage of Rosenfeld, 662 N.W.2d 373 (Iowa Ct.App.2003); In re Marriage of Rosenfeld, 524 N.W.2d 212 (Iowa Ct.App.1994); In re Marriage of Rosenfeld, 535 N.W.2d 169 (Iowa Ct.App. 1994); In re Marriage of Rosenfeld, 485 N.W.2d 107 (Iowa Ct.App.1991).

During their marriage, Goode–Kanawati and Rosenfeld had two children, Natalie born in 1981 and Andrew born in 1987. During the dissolution proceedings, Rosenfeld testified that during the parties' marriage, they purchased four zero coupon bonds, expected to pay $25,000 per year for four years beginning in 2000, to be used for Natalie's college education. A mutual fund was also purchased for her benefit to pay the tax on the bonds. These items were given to Natalie under the Uniform Gifts to Minors Act (UGMA), now called the Uniform Transfers to Minors Act (UTMA). See Iowa Code ch. 565B (2001). Rosenfeld also told the court $20,000 of marital funds was used to purchase Iowa Finance Authority Sewage Bonds to be used for Andrew's education.

The bonds were left in Rosenfeld's name. The dissolution decree provided certain properties set aside for the parties' two minor children would not be divided between Rosenfeld and Goode–Kanawati. Nonetheless, Rosenfeld was awarded $20,000 of sewage bonds.

In January 1995, the bonds in Natalie's name were called by the issuer. Rosenfeld, as custodian of the accounts, was paid $40,311 which he placed into his own checking account. Rosenfeld spent those funds. When Natalie graduated from high school in 2000, Martin filed an application for modification of child support and sought to determine the parties' obligations toward Natalie's college expenses. Goode–Kanawati filed a separate petition for an accounting of the funds held by Martin for the children. Goode–Kanawati also asked the court to order Rosenfeld to deliver all assets in the children's custodial accounts to her. The district court consolidated the two cases for trial.

The district court found Rosenfeld violated the UTMA by commingling Natalie's funds with his own and by failing to keep adequate records of the disbursements made from the account. The court found Rosenfeld improperly used over $14,000 of the money and determined the funds would have grown at five percent per annum.[1] The court ordered Rosenfeld to restore $20,000 to Natalie's funds and made Goode–Kanawati custodian of the account. As to the remaining money in the accounts, the court found the funds were sufficient to cover Natalie's college expenses. The court also found Goode–Kanawati did not prove a trust had been established for Andrew. The trial court awarded Goode–Kanawati $500 in attorneys' fees and $150 for expert witness fees.

The court also determined Iowa Code section 598.21(5A) (1999) did not apply to limit the obligation for postsecondary education expenses in this case. Goode–Kanawati appealed and Rosenfeld cross-appealed.

The Iowa Court of Appeals rejected Goode–Kanawati's claim that trusts had been created on behalf of both the children. The court ordered Natalie's funds to be partially restored by Rosenfeld and ordered Rosenfeld to pay $500 for appellate attorney fees. We granted Goode–Kanawati's petition for further review.

## II. Scope of Review

Our scope of review of this equitable action is de novo. Iowa R.App. P. 6.4.

## III. The Merits

On further review, we must determine whether Rosenfeld, as custodian of Natalie's UTMA account, properly spent her money. We also address whether the funds in the Iowa Finance Authority Sewage Bonds constituted an express trust for Andrew's benefit. Finally, we address whether attorney fees and costs should be assessed against Rosenfeld.

### A. Status of Natalie's Funds

On further review, Goode–Kanawati asks this court to look at several issues relevant to the status of Natalie's UTMA funds. First, she argues the funds in Natalie's UTMA account constituted a trust for the sole purpose of funding Natalie's college education. She also seeks reimbursement from Rosenfeld due to his improper use of the UTMA funds.

---

1. The court stated it was a "reasonable expectation" that "the funds would have grown at a rate of five percent annually."

### 1. Nature of the UTMA Funds

■ Goode–Kanawati argued Rosenfeld should only have been permitted to use the UTMA funds for Natalie's educational expenses, as this was the express purpose of the trust. The district court found because Natalie was given ownership of the bonds and mutual funds under UTMA, Iowa Code chapter 565B controls these transfers.

Goode–Kanawati's arguments are based upon the premise that the UTMA funds set aside for Natalie's college education constituted a "restricted use trust." If the funds constitute a trust, Goode–Kanawati asserts Rosenfeld was only permitted to make expenditures in the interests of the express purpose of the trust, i.e. to provide support for college expenses. We disagree and conclude transfers made to children under UTMA are not trusts.

■ The purpose of UTMA transfers is to provide a simple way for gifting money to minors while avoiding the complications of establishing a formal guardianship or trust. *In re Marriage of Hendricks,* 681 N.E.2d 777, 781 (Ind.Ct.App.1997); *see also Sternlicht v. Sternlicht,* 822 A.2d 732, 737 (Pa.Super.Ct.2003). When a transfer to a minor is made under UTMA, unlike trusts, the donor relinquishes his or her title to the property. *See In re Marriage of Hoak,* 364 N.W.2d 185, 189 (Iowa 1985); *Marshall v. United States,* 831 F.Supp. 988, 1000 (E.D.N.Y.1993) (UGMA transfer "does not afford any rights, legal or equitable," to donor); 15 Am.Jur.2d *Gifts* § 16, at 714 (1999). Once the gift is made, it is irrevocable. *In re Marriage of Hendricks,* 681 N.E.2d at 781; *Sternlicht,* 822 A.2d at 737; 15 Am.Jur.2d *Gifts* § 16, at 715. As such, a gift under UTMA is not a trust per se. Transfers under UTMA are made as a way to gift funds to a minor while giving

discretion to a designated custodian to manage the funds. 15 Am.Jur.2d *Gifts* § 16, at 714.

■ A transfer under UTMA is governed by Iowa Code section 565B.14(1) which provides:

A custodian may deliver or pay to the minor or expend for the minor's benefit so much of the custodial property as the custodian considers advisable for the use and benefit of the minor, without court order and without regard to:

*a.* The duty or ability of the custodian personally or of any other person to support the minor; or

*b.* Any other income or property of the minor which may be applicable or available for that purpose.

Iowa Code § 565B.14(1) (1999). The custodians of a transfer under UTMA may use their discretion to make expenditures on behalf of the minor. *Sutliff v. Sutliff,* 339 Pa.Super. 523, 489 A.2d 764, 773 (1985). Goode–Kanawati reads too much into our UTMA statute. Neither the simple creation of an UTMA account, nor the parents' educational intent in creating the account, transforms the funds into a trust. *See id.* Rosenfeld's testimony at trial assuring the court he had taken financial measures to assure his children's educations did not elevate the UTMA accounts to a trust.

### 2. Misappropriation of Natalie's UTMA Funds

■ In early 1995, Natalie's bonds gifted to her under UTMA were called. The bonds were liquidated for $40,311. Shortly thereafter, Rosenfeld deposited $40,000 of those funds into his personal checking account.[2] In doing so, Rosenfeld misappropriated Natalie's UTMA funds.

**2.** The coupon bonds were liquidated for

$40,311.00. The record shows $311 was left

Rosenfeld provided an accounting of his expenditures. Rosenfeld's accounting showed he used $51,264.86 from his account to benefit Natalie, Andrew, and the family. Of that amount, Rosenfeld spent $27,402.79 on Natalie for things such as clothing, furniture, travel expenses, Bat Mitzvah expenses, dental expenses, and taxes. The question is whether Rosenfeld is allowed a credit for any of the expenditures made for Natalie.

The precise dates and amounts of the expenditures are difficult to discern from the record. Some expenditures, however, clearly occurred *before* Rosenfeld deposited Natalie's UTMA funds into his own personal checking account. For example, Rosenfeld claims that he spent in excess of $13,000 on Natalie's 1994 Bat Mitzvah. When Rosenfeld paid for Natalie's Bat Mitzvah, he spent from his own account— only later, when made to account for Natalie's UTMA funds, does Rosenfeld characterize the Bat Mitzvah expenses as expenditures on behalf of Natalie to lessen his obligation to repay. We refuse to credit such expenditures against Rosenfeld's subsequent misappropriation of Natalie's UTMA funds.

■ Other expenditures were made many years *after* Rosenfeld deposited Natalie's funds into his own account. For example, Rosenfeld claims he spent at least $520 in late 2000 on Natalie's airfare. By the time of these expenditures, however, the UTMA funds had already been used, i.e., deposited into Rosenfeld's account.

■ Rosenfeld should receive a credit only for $1426 of expenditures from Natalie's UTMA account. In 1995, when the bonds were called, Rosenfeld paid $1426 in taxes for Natalie. This amount represents the only allowable expenditure under the rules of UTMA transfers.[3]

Having misappropriated his child's money, we will not lessen Rosenfeld's obligation to repay this money by crediting him with amounts he spent on Natalie before the bonds were liquidated or at later times after the funds had been used for other purposes. He will not be deemed to have made some type of restitution for money he spent on his daughter during the six years following the taking.

■ When a custodian misappropriates UTMA funds, the custodian shall reimburse the child for those funds. *Buder v. Sartore*, 774 P.2d 1383, 1390 (Colo.1989). At an interest rate of five percent annually, by 2001, Natalie's funds were worth $51,692.85. Because Rosenfeld misappropriated his daughter's UTMA funds, he should pay $51,692.85 into an UTMA account for Natalie, naming Goode–Kanawati as account holder with her daughter. We affirm as modified.[4]

### 3. Funding for Natalie's College Education

■ Goode–Kanawati claims the funds in Natalie's UTMA account are not sufficient to cover Natalie's college expenses. As such, she requests this court order Rosenfeld to pay whatever is in excess of the UTMA funds. The district court found and we agree, Natalie's college ex-

in Natalie's UTMA account.

**3.** We do not hold the types of expenditures Rosenfeld made for Natalie are disallowed under UTMA, but merely that he was not spending *her* money for these things.

**4.** The district court removed Rosenfeld as the custodian of Natalie's UTMA account from which he misappropriated money. As to Natalie's mutual funds, the district court permitted Rosenfeld to remain the custodian. We affirm the district court's judgment in this regard.

penses were approximately $7725 per year for tuition, room, board, fees, and books. Goode–Kanawati asserts it costs $14,000 per year to send Natalie to a four-year public college in North Carolina. The amount suggested by Goode–Kanawati includes the costs of a car, gasoline, clothing, and a telephone. The question is whether Rosenfeld should pay more than the UTMA funds will pay.

Rosenfeld's obligation to subsidize Natalie's college expenses is limited by Iowa Code section 598.21(5A). This statute says "[t]he court may order a postsecondary education subsidy if good cause is shown." Iowa Code § 598.21(5A). The court shall determine "the reasonable costs for only necessary postsecondary education expenses." *Id.* Generally, the costs of college include "tuition, room, board, and books." *In re Marriage of Griffin,* 570 N.W.2d 258, 260 (Iowa Ct.App.1997). Goode–Kanawati asserts the court should conclude Natalie's expenses for transportation, clothing, and telephone are "reasonable" costs for "necessary" expenses. We do not address this issue.

It can be reasonably argued transportation costs and other incidental living expenses may exceed $7725 per year. *See In re Marriage of Vannausdle,* 668 N.W.2d 885, 889 (Iowa 2003) ("We think our legislature also understood that the necessary postsecondary education expenses includes more than tuition, books, and room and board."). However, even if we allowed such expenses as "reasonable costs" for "necessary postsecondary educational expenses," Natalie has sufficient funds gifted to her by her parents to pay these expenses. Under such circumstances, it cannot be said "good cause" under Iowa Code section 598.21(5A) exists for ordering Rosenfeld to contribute more than he has already done in creating Natalie's accounts. We affirm.

**B. Status of Andrew's Claim**

*1. Nature of the Iowa Sewage Authority Bonds*

Goode–Kanawati argues the Iowa Sewage Authority Bonds taken out to benefit Andrew constituted a trust. Pursuant to Iowa Rule of Appellate Procedure 6.14(6)(e), Goode–Kanawati had the burden to prove a trust was established. She failed to do this.

In the dissolution decree, the district court stated:

> Martin has invested certain amounts in trust for the benefit of his children by a former marriage and for Natalie and Andrew. These trust funds are for the benefit of the children and the court makes no order as to these.

Though the court made no disposition as to Natalie's funds, it awarded the Iowa Finance Authority Sewage Bonds to Rosenfeld, listing the bonds and their total value. The court stated the "assets of the parties should be divided equitably." It appears from the dissolution decree that Goode–Kanawati was awarded at least half of the marital assets. Though the court used the words "trust fund" in the dissolution decree, the fact the court awarded the funds to Rosenfeld indicates the court did not actually conclude the bonds constituted a trust or that the court intended to create a trust by its decree. Although it is well within the power of the court to create such a trust, the court simply did not do this. Rather, the bonds were explicitly awarded to Rosenberg as "the partnership-tax-savings investments and other investments" under the dissolution decree. The bonds have never been in Andrew's name. Rather, they were Rosenfeld's property and he rightfully maintained them in his investment portfolio after the dissolution.

## 2. Determination of College Expenses under Iowa Code section 598.21(5A)

Rosenfeld argues he is not obligated to pay any more for Andrew's postsecondary education than the amount the statute requires. Iowa Code section 598.21(5A) limits the amount a parent must pay toward postsecondary education expenses. 1997 Iowa Acts ch. 175, § 190 (codified at Iowa Code § 598.21(5A) (1999)). This section, in part, states a party shall not pay more than one-third of the total cost of postsecondary education expenses. Relying on the one-third limit, in 2001, Rosenfeld and Goode–Kanawati made stipulations regarding the amount to be paid by either party for college *if* the court was going to follow the method of calculating pursuant to Iowa Code section 598.21(5A). The parties stipulated if any amount was to be paid by either party, it would be $3014 per year.

After trial, the court ruled, in its judgment on Rosenfeld's application for modification of child support, that section 598.21(5A) did not apply to this case. The court relied upon *In re Marriage of Sojka* in which we stated, "section 598.21(5A) applies only to dissolution decrees postdating the statute's enactment." 611 N.W.2d 503, 505 (Iowa 2000). Because the dissolution decree in the present case was entered in 1990, before section 598.21(5A) was enacted, the trial court ruled the statute did not apply. Rosenfeld cross-appealed the judgment of the trial court arguing the court erred in holding Iowa Code section 598.21(5A) did not control the determination of the parties' respective obligations toward Andrew's postsecondary educational expenses. The court of appeals affirmed the trial court's conclusion.

*In re Marriage of Sojka* does not apply to this case, however, because in *Sojka*, unlike here, the dissolution decree determined parental contributions to the child's college expenses. *Id.* at 504. Because the obligations were determined prior to the enactment of the statute, we held section 598.21(5A) did not apply. In the present case, however, Iowa Code section 598.21(5A) is nevertheless applicable because the court did not fix college expenses prior to the enactment of 598.21(5A). *See In re Marriage of Harless*, 251 N.W.2d 212, 213 (Iowa 1977) ("[S]tatutes have prospective application only unless a clearly contrary intent appears.").[5] Therefore, Iowa Code section 598.21(5A) operates to limit the amount of money Rosenfeld is obligated to pay toward Andrew's college education.[6]

---

**5.** We should also acknowledge that the legislature has recently amended Iowa Code section 598.21(5A), which now explicitly states that "[a] support order, decree, or judgment entered or pending before July 1, 1997, that provides for support of a child for college, university, or community college expenses may be modified in accordance with this subsection." Iowa Code § 598.21(5A)(e) (2003). We do not reach this issue, however.

**6.** Iowa Code section 598.21(5A) provides:
The court may order a postsecondary education subsidy if good cause is shown.
a. In determining whether good cause exists for ordering a postsecondary education subsidy, the court shall consider the age of the child, the ability of the child relative to postsecondary education, the child's financial resources, whether the child is self-sustaining, and the financial condition of each parent. If the court determines that good cause is shown for ordering a postsecondary education subsidy, the court shall determine the amount of subsidy as follows:
(1) The court shall determine the cost of postsecondary education based upon the cost of attending an in-state public institution ... and shall include the reasonable costs for only necessary postsecondary education expenses.
(2) The court shall then determine the amount, if any, which the child may reasonably be expected to contribute....
(3) The child's expected contribution shall be deducted from the cost of postsecondary

We refuse to enforce, however, the parties' conditional stipulation to Rosenfeld's obligation to pay Andrew's college expenses. The parties made this conditional stipulation in 2001, in the midst of protracted litigation, when Andrew was only fourteen years old. That is, he was still at least four years shy of attending college. There is nothing in the record to indicate Andrew plans on attending college. In recent years, college education expenses have increased between three and six percent each year.[7] With the ever-increasing costs of sending a child to college, it would be difficult to set a specific dollar amount of an obligation four years before the child attends college.[8] Additionally, because Iowa Code section 598.21(5A) applies, the court is required to consider the amount, if any, a child can contribute to his education. It is also premature to calculate Rosenfeld's obligation to Andrew because we do not know if there will be any scholarships, grants, work-study, or other money available to defray the cost of Andrew's education.

In the usual context, parties to a dissolution are free to make agreements regarding the future college expenses of their children, which the courts may then enforce. In this case, however, the parties' stipulation was, in fact, a conditional stipulation, made in the context of protracted litigation, which would only apply if the district court held that a statute applied.

Rosenfeld's postsecondary education contribution should be calculated based upon Iowa Code section 598.21(5A), but we refuse to enforce their stipulation at the present time. To do so would not only be impractical, but, more importantly, not in the best interests of the child. We therefore affirm, but on different grounds.

## C. Issue of Attorneys Fees

On further review, Goode–Kanawati urges us to order Rosenfeld to pay her trial and appellate attorney fees, in light of Rosenfeld's misappropriation of Natalie's UTMA funds and trial tactics.[9] As a general rule in Iowa, however, attorney fees are not allowed in the absence of a statute or contract authorizing such an award. *Suss v. Schammel*, 375 N.W.2d 252, 256 (Iowa 1985). The case before us concerns both an accounting of funds action and a modification action. *See* Iowa Code §§ 565B and 598.

The district court ordered Rosenfeld to pay for Goode–Kanawati's attorney fees on the modification action, but not the accounting of funds action. With respect to the accounting of funds action, the court correctly pointed out that Iowa Code section 565B (transfers to minors) does not authorize a court to grant attorney fees. Goode–Kanawati urges us to make an exception to the *Suss* principle in the present case, but we refuse to do.

education and the court shall apportion responsibility for the remaining cost of postsecondary education to each parent. The amount paid by each parent shall not exceed thirty-three and one-third percent of the total cost of postsecondary education. Iowa Code § 598.21(5A).

7. *See In re Marriage of Vannausdle,* 668 N.W.2d at 889, n. 1.

8. Recent statistics indicate the average annual cost at a four-year public college in Iowa is

$14,237. *See* Iowa College Student Aid Commission, *Typical Undergraduate Student Expenses* at 1 (2003). This figure is based on data for the 2003–04 academic year. It varies considerably from the average annual costs at the same institutions in the 2001–02 academic year: $11,108. *See* Iowa College Student Aid Commission, *Typical Undergraduate Student Expenses* at 1 (2001).

9. Goode–Kanawati alleges that she has spent in excess of $56,000 pursuing this action.

In modification proceedings, however, "the court may award attorney fees to the prevailing party in an amount deemed reasonable by the court." *Id.* § 598.36. As a threshold matter, the trial court found that "each party has the ability, without hardship, to pay his and her own attorney fees." The court then ordered Rosenfeld to pay Goode–Kanawati $500 as a sanction for discovery violations.

 The decision to award attorney fees rests within the sound discretion of the court, and we will not disturb its decision absent a finding of abuse of discretion. *In re Marriage of Maher,* 596 N.W.2d 561, 568 (Iowa 1999). Whether fees ought to be awarded depends, in part, on the ability of the parties to pay. *In re Marriage of Guyer,* 522 N.W.2d 818, 822 (1994). The record does not show that the trial court abused its discretion in awarding Goode–Kanawati $500 in trial attorney fees. We affirm.

 Similarly, this Court also has the authority to award appellate attorney fees. *See* Iowa Code § 598.36; *In re Marriage of Maher,* 596 N.W.2d at 568. In arriving at our decision, we consider Goode–Kanawati's needs, Rosenfeld's ability to pay, and Goode–Kanawati's obligation to defend the trial court's decision on the cross-appeal. *See id.* The court of appeals awarded Goode–Kanawati $1000 in appellate attorney fees (which Rosenfeld does not contest), but, taking into account the foregoing factors, we increase the award of the court of appeals by $4000, and grant Goode–Kanawati $5000 for her appellate attorney fees.

## IV. Conclusion

We affirm the district court's decision as to Natalie's funds. The zero coupon bonds gifted to Natalie under UTMA did not constitute a trust. Rosenfeld would not have been restricted to make expenditures out of these funds solely for educational purposes. However, in this case, Rosenfeld did not make expenditures out of these funds for Natalie's benefit. Even though it was shown he spent money on her after the misappropriation, Rosenfeld will not receive a credit for these expenditures. Rosenfeld must reimburse Natalie for his improper use of the UTMA funds. After this reimbursement, the UTMA accounts are sufficient to fund Natalie's college education. We also affirm the district court's decision that the bonds taken out for Andrew's benefit belong to Rosenfeld. The dissolution court specifically awarded the bonds to Rosenfeld, identifying both the type of bonds and amount. Rosenfeld rightfully maintained the bonds in his own investment portfolio. The district court properly rejected Rosenfeld's attempt to use the parties' stipulation to set his obligations for Andrew's college expenses. Nevertheless, those obligations, if they arise, should be determined pursuant to Iowa Code section 598.21(5A). We affirm, albeit on other grounds. Finally, we affirm the district court's decision awarding Goode–Kanawati trial attorneys' fees and we award her $5000 for appellate attorney fees.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART AS MODIFIED AND REVERSED IN PART.**

All justices concur except LAVORATO, C.J., who takes no part.