In re MARRIAGE OF Marilyn A. MULLEN–FUNDERBURK and Jack D. Funderburk

Upon the Petition of Marilyn A. Mullen–Funderburk n/k/a Marilyn A. Mullen, Appellant,

and

Concerning Jack D. Funderburk, Appellee.

No. 04–0160.

Supreme Court of Iowa.

May 20, 2005.

Lawrence J. Lammers of McCarthy, Lammers & Hines, Davenport, for appellant.

Dennis D. Jasper, Bettendorf, for appellee.

CARTER, Justice.

Marilyn A. Mullen–Funderburk, the noncustodial parent of a child entering college, appeals from the district court's order extending her child support obligation beyond high school graduation and increasing it to the current guideline amount. The appellee is the child's father, Jack D. Funderburk. The court of appeals held that the continuation of guideline child support beyond high school graduation was inappropriate. In lieu thereof, it provided for a postsecondary education subsidy pursuant to Iowa Code section 598.21(5A) (2003). After reviewing the record and considering the arguments presented, we affirm the decision of the court of appeals.

The Funderburks' marriage was dissolved on August 24, 1995. At that time, they had one child, Kelly Mullen–Funderburk, who was then one month shy of her eleventh birthday. The dissolution decree granted the parties joint custody of Kelly and provided that Jack was to exercise primary physical care. Marilyn was ordered to pay child support to Jack in the sum of $408 per month, the amount of support provided in the child support guidelines. The decree further provided: "This Decree is subject to Iowa Code section 598.1(6)." [1]

On May 9, 2003, Marilyn filed an application to modify the decree by terminating her monthly child support payments upon Kelly's graduation from high school and substituting a postsecondary education subsidy requiring her to pay no more than one-third of Kelly's college expenses. Jack resisted Marilyn's application and petitioned to modify the decree by increasing the amount of Marilyn's monthly child support payments to the guideline amount based on the parties' current incomes.

The hearing on the parties' respective applications to modify the decree was not held until November 10, 2003, at which time Kelly had already begun her college education at the University of Iowa. Evidence was presented showing that Marilyn's annual income had increased from $34,000 at the time of the decree to $72,000 in 2002. During this same period, Jack's income had decreased from $39,000 to $37,700. Evidence was offered concerning Kelly's expected annual college expenses and the amounts she would receive from a work-study grant and a student loan. In addition, the evidence showed that Kelly

1. At the time of the decree, this statute provided:

"Support" or "support payments" means an amount which the court may require either of the parties to pay under a temporary order or a final judgment or decree, and may include alimony, child support, maintenance, and any other term used to describe these obligations.... The obligations may include support *for a child who is between the ages of eighteen and twenty-two years* who is regularly attending an accredited school in pursuance of a course of study leading to a high school diploma or its equivalent, or ... a full-time student in a college, university, or community college; or has been accepted for admission to a college, university, or community college and the next regular term has not yet begun....

Iowa Code § 598.1(6) (1995) (emphasis added).

was expected to receive some income from summer jobs when classes were not in session.

In ruling on the parties' applications, the district court concluded that, because the original decree provided that it was "subject to Iowa Code section 598.1(6)," that statute, as it existed in 1995, authorized the continuation of Marilyn's guideline support payments through age twenty-two as long as Kelly was attending college. The court also determined that, based on the parties' current salaries, Marilyn's monthly support obligation under the guidelines should be increased to $745 per month. Jack has stipulated that these support payments may be made directly to Kelly.

In reviewing the district court's decision, the court of appeals ruled that, because support beyond high school was not fixed in the 1995 decree, Marilyn's support obligation under the decree had terminated. The court found that the continuation of monthly support payments to Kelly in an amount fixed by the child support guidelines was unwarranted because of a change in the law concerning postsecondary education subsidies. The court of appeals concluded that the proper course of action was to establish a postsecondary education subsidy in accordance with the current Iowa Code section 598.21(5A) as the measure of Marilyn's (and also Jack's) obligation to Kelly during her college years.[2]

## I. Standard of Review.

■ A proceeding to modify or implement a marriage dissolution decree subsequent to its entry is triable in equity and reviewed de novo on appeal. *In re Marriage of Sojka*, 611 N.W.2d 503, 504 (Iowa 2000); *In re Marriage of Walters*, 575 N.W.2d 739, 740 (Iowa 1998).

## II. Issues on Appeal.

■ We have previously set forth the 1995 statutory law in effect at the time of the decree. When the time arrived to make some provision for Kelly's undergraduate college education, that statute had been substantially altered in a manner hereafter described. Provisions for postsecondary financial assistance for children ages eighteen to twenty-two had been made more structured and definite. The legislature in 1997 had amended section 598.1(6), defining support, as it had existed in 1995, by removing postsecondary support from the definition, redefining support to terminate at age nineteen, and establishing a separate definition for a "postsecondary education subsidy," which may extend through age twenty-two. 1997 Iowa Acts ch. 175, §§ 184, 185.[3] In addition, the legislature in 1997 amended section 598.21 by adding a new paragraph 5A.1997 Iowa Acts ch. 175, § 190.[4]

---

2. The district court's order failed to fix any required amount of financial assistance from Jack while Kelly is attending college. Unless the court subjects him to some postsecondary support obligation, Jack, whose only obligation had been the general obligation of a custodial parent to provide for his child's needs, will have no support obligation to Kelly after she attained the age of eighteen and graduated from high school. *See Johnson v. Louis*, 654 N.W.2d 886, 887–88 (Iowa 2002).

3. The new definition of support is contained in Iowa Code section 598.1(9). The definition of postsecondary education subsidy is contained in Iowa Code section 598.1(8).

4. For purposes of providing for parental assistance in postsecondary education, that statute provides:

> [T]he court shall determine the amount of subsidy as follows:
>     (1) The court shall determine the cost of postsecondary education based upon the cost of attending an in-state public institution for a course of instruction leading to an undergraduate degree and shall include

Notwithstanding this change in the law, Jack argues that the reference in the decree to section 598.1(6) of the Code necessarily requires the rights of the parties in the present dispute to be determined in accordance with the law in effect at the time of the decree. As support for this contention, Jack relies on our decision in *Sojka*, 611 N.W.2d at 505. In that case, a 1992 dissolution decree had required a father to pay with respect to his two children "one third (1/3) of the child's tuition, books, room and board, while the child is a full-time student and under the age of twenty-two." Following the enactment of current section 598.21(5A) in 1997, the father sought to modify that provision to comport with a postsecondary education subsidy determined in accordance with section 598.21(5A). In refusing to grant that request, this court stated, "we now hold that section 598.21(5A) applies only to dissolution decrees postdating the statute's enactment." *Sojka*, 611 N.W.2d at 505.

*Sojka* relied in part on our earlier decision in *In re Marriage of Harless*, 251 N.W.2d 212 (Iowa 1977), in which we refused to modify a decree specifying the payment of child support "until age twenty-one," because of a reduction of the age of majority subsequent to the decree. Using language similar to that in *Sojka*, we stated, "[t]he better rule is the one which holds that the law in effect at the time of the decree should govern." *Harless*, 251 N.W.2d at 213.

Marilyn urges that the decisions in *Sojka* and *Harless* are inapposite because, unlike the present case, the original decrees had established a specific level of support that was sought to be altered. She also points out that subsequent to the *Harless* and *Sojka* decisions the legislature enacted Iowa Code section 598.21(5A)(*e*), which provides:

> *e.* A support order, decree, or judgment entered or pending before July 1, 1997, that provides for support of a child for college, university, or community college expenses may be modified in accordance with this subsection.

2002 Iowa Acts ch. 1018, § 17. An uncodified provision in the legislative acts enacting the foregoing provision provides that this provision

> relating to the modification of a support order, decree, or judgment pending on or before July 1, 1997 that provides for support of a child for college, university, or community college expenses, being deemed of immediate importance, takes effect on enactment and is retroactively applicable to support orders, decrees, or judgments as described in [Iowa Code section 598.21(5A)(*e*)] entered or pending before July 1, 1997.

*Id.* § 21.

In *In re Marriage of Rosenfeld*, 668 N.W.2d 840 (Iowa 2003), we determined that, when no level of college-age educational support has been established in the original decree, and that issue is being

---

the reasonable costs for only necessary postsecondary education expenses.

(2) The court shall then determine the amount, if any, which the child may reasonably be expected to contribute, considering the child's financial resources, including but not limited to the availability of financial aid whether in the form of scholarships, grants, or student loans, and the ability of the child to earn income while attending school.

(3) The child's expected contribution shall be deducted from the cost of postsecondary education and the court shall apportion responsibility for the remaining cost of postsecondary education to each parent. The amount paid by each parent shall not exceed thirty-three and one-third percent of the total cost of postsecondary education. 1997 Iowa Acts ch. 175, § 190 (now codified as Iowa Code § 598.21(5A)).

decided for the first time after July 1, 1997, the decision is controlled by the statutory provisions for a postsecondary education subsidy contained in sections 598.1(8) and 598.21(5A). *Rosenfeld*, 668 N.W.2d at 848. We reached a similar result in *In re Marriage of Goodman*, 690 N.W.2d 279, 283 (Iowa 2004). *Rosenfeld* and *Goodman* are dispositive of our decision in the present case.

■ The reference in the decree to the statutory definition of support as it then existed may have been an effort to retain jurisdiction for purposes of deciding college-level support at the time the issue might arise. It was certainly not self-executing for purposes of establishing the support obligation of either party during Kelly's college years. Such provisions are not necessary because these issues may be taken up at a later time, even if the decree is silent on the matter. *In re Marriage of Pieper*, 369 N.W.2d 439, 441 (Iowa 1985); *Willcox v. Bradrick*, 319 N.W.2d 216, 219 (Iowa 1982). In considering this issue, it is helpful to point out that, although the procedural vehicle ordinarily used to establish the parties' obligations to pay college expenses, following a dissolution decree that is silent as to such matters, is a petition to modify the decree, such proceedings are not truly modification actions. Where a decree has not established a fixed level of payment, the determination of that obligation is an original adjudication. It is not necessary to show a substantial change of circumstances as in the usual modification. Viewed in that manner, it also follows that such determinations should be based on both the facts and the law in existence when the determination is made. The court of appeals decision is fully consistent with that approach and is affirmed.

■ The court of appeals did not fix the amount of Kelly's postsecondary education subsidy and left that matter for the district court on remand. We do the same. We note, however, that this determination should attempt to establish what the subsidy should have been with regard to Kelly's prior college attendance as well as fixing a subsidy for her future college attendance. The determination of each parent's obligation shall be made as to both prior years and future years. Credit shall be given for college expenses already advanced by either parent. To avoid inequity, the court may reconcile the respective past obligations by requiring one parent to indemnify the other for payments beyond that required under the postsecondary education subsidy that the court retroactively establishes for prior college years, but only to the extent that the indemnifying parent has underpaid that parent's own share of the subsidy. Costs of the appeal and in the district court are assessed to Jack. The parties shall pay their own attorney fees.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT DECREE REVERSED AND REMANDED.**