# IN THE SUPREME COURT OF IOWA

No. 48 / 05-0507

Filed May 26, 2006

**IN RE THE MARRIAGE OF BONNIE M. PALS
AND JAMES J. PALS**

**Upon the Petition of
BONNIE M. PALS**,

Appellee,

**And Concerning
JAMES J. PALS**,

Appellant.

_____

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Hancock County, John S. Mackey, Judge.


Appeal from court's refusal to modify dissolution decree to terminate child-support obligation and to establish postsecondary education subsidy for parties' adult son. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


Gary L. Berkland of Houser & Berkland, Belmond, for appellant.


Christopher C. Foy of Leslie, Collins & Foy, Waverly, for appellee.

**CADY, Justice.**

In this appeal from a decision by the district court on a petition for modification of a decree for dissolution of marriage, the noncustodial parent primarily challenges the denial of his request to terminate his child-support obligation and to establish a postsecondary education subsidy for his adult son. The district court and the court of appeals both found he failed to show a substantial change in circumstances justifying modification. We granted further review. We vacate the decision of the court of appeals, affirm the decision of the district court in part, reverse in part, and remand for further proceedings.

## I.    Background Facts and Proceedings

Bonnie and James Pals were married on August 14, 1982. They had two children. Nicole was born June 19, 1979 and was adopted by James during the marriage. Joel was born August 30, 1985.

Bonnie and James were divorced on April 1, 1991. The parties stipulated that Bonnie would have primary physical care of the children, and James would have reasonable visitation with them. The court ordered James to pay child support for both children pursuant to the child support guidelines in the amount of $679 per month. Support was to continue in that amount until Nicole turned eighteen or finished high school, whichever occurred later; or married, died, or became self-supporting. Additionally, the decree contained a separate provision that provided:

> In the event that the first child of the parties shall continue with any post-secondary education, the required level of support shall continue at the rate of $679 per month until such time as the first child of the parties either completes the post-secondary education or attains the age of 22, whichever shall first occur, pursuant to section 598.1(2), The Code.

Once the obligation to support Nicole terminated, the monthly support obligation for Joel was reduced to $495. The decree contained the same terms for termination of Joel's support as for Nicole, and also included the same provision to extend the support obligation in the event Joel pursued a postsecondary education.

Nicole turned eighteen in 1997 and began college. Pursuant to the decree, James continued to pay $679 in child support. Nicole married in October 2000, an event under the decree that terminated James's obligation to provide support for her and reduced his support obligation to Joel to $495 a month. Notwithstanding, James continued to pay $679 in child support each month until May 2004, when he filed a petition to modify the decree.

Joel graduated from high school in 2004, and began college at Northern Iowa Area Community College in the fall of that year. He moved from Bonnie's house into a rental house he shared with three roommates. During Joel's first year of college, James paid the cost of tuition and books not covered by scholarships and grants—$1,118.50.

In the modification proceeding, James alleged the following changes since the time of the decree constituted a substantial change in circumstances justifying modification: (1) he retired as a teacher and began receiving retirement benefits on June 1, 2004; (2) the legislature enacted Iowa Code section 598.21(5A), providing for postsecondary education subsidies, in 1997; (3) the parties never submitted a qualified domestic relations order (QDRO) to the court for approval to implement the original decree's division of James's IPERS benefits; and (4) his income decreased, while Bonnie's income increased. James asked the court to modify the decree to enter a QDRO dividing his IPERS benefits according to the provisions of the original decree, terminate his child-

support obligation, and order a postsecondary education subsidy for Joel. James also sought attorney fees.

The district court entered its judgment on March 1, 2005. The court concluded James failed to establish a substantial change in circumstances to justify the termination of his child-support obligation or the imposition of a postsecondary education subsidy. However, the court found James overpaid $7912 in child support under the original decree by continuing to pay $679 per month after Nicole's marriage in October 2000. Accordingly, the court offset his child-support arrearage that had accumulated when he stopped paying support after he filed the modification petition in May 2004, and gave James "a net credit of $3457 yet to be applied to the ongoing post-secondary support obligation owed to Bonnie." Additionally, the court entered a QDRO implementing the original decree's division of James's IPERS benefits and ordered each party to be responsible for his or her own attorney fees and one half of the court costs.

James appealed, and Bonnie cross-appealed. James claimed the district court erred in failing to replace the child-support obligation under the decree with an educational subsidy, effective August 2004. He also asked that he be reimbursed for any child-support payments made during the pendency of the appeal not paid over to Joel. Bonnie claimed the district court erred in granting James a credit for the support overpayment. She further claimed the QDRO entered by the district court did not accurately reflect the IPERS division in the original decree. We transferred the case to the court of appeals. The court of appeals reversed the portion of the district court judgment that gave James a credit for the overpaid support, but otherwise affirmed the district court decision. James applied for further review, which we granted.

## II. Standard of Review

"A proceeding to modify or implement a marriage dissolution decree subsequent to its entry is triable in equity and reviewed de novo on appeal." *In re Marriage of Mullen-Funderburk*, 696 N.W.2d 607, 609 (Iowa 2005) (citations omitted).

## III. Modification of Support for College-Aged Child

Dissolution decrees may be modified upon a substantial change in circumstances. Iowa Code § 598.21(8) (2003). To constitute a "substantial change in circumstances," the changed conditions " 'must be material and substantial, not trivial, more or less permanent or continuous, not temporary, and must be such as were not within the knowledge or contemplation of the court when the decree was entered.' " *In re Marriage of Rolek*, 555 N.W.2d 675, 679 (Iowa 1996) (quoting *Mears v. Mears*, 213 N.W.2d 511, 515 (Iowa 1973)). This is the longstanding general approach to the modification of provisions in a decree of dissolution of marriage, and it utilizes a fact-intensive analysis. *See, e.g.*, *In re Marriage of Jacobo*, 526 N.W.2d 859, 864 (Iowa 1995) ("A party who seeks a modification of a dissolution decree must establish by a preponderance of the evidence that there has been a substantial change in circumstances since the entry of the decree or its last modification." (citing *In re Marriage of Lee*, 486 N.W.2d 302, 304 (Iowa 1992); *In re Marriage of Bergfeld*, 465 N.W.2d 865, 870 (Iowa 1991))); *Prandy v. Prandy*, 241 Iowa 1050, 1053, 44 N.W.2d 379, 381 (1950) ("The changing of a decree is only justified where it is shown that there has been a substantial change of circumstances and is done to adapt the decree to changed conditions of the parties." (citing *Metzger v. Metzger*, 224 Iowa 546, 278 N.W. 187 (1938); *Barish v. Barish*, 190 Iowa 493, 180 N.W. 724 (1920); *Hart v. Hart*, 239 Iowa 142, 30 N.W.2d 748 (1948); *Smith v.*

*Smith*, 239 Iowa 896, 32 N.W.2d 662 (1948))). However, the legislature has at times altered this approach by describing specific circumstances that permit modification. *See, e.g.,* Iowa Code § 598.21(8A) ("If a parent awarded joint legal custody and physical care or sole legal custody is relocating the residence of the minor child to a location which is one hundred fifty miles or more from the residence of the minor child at the time that custody was awarded, the court may consider the relocation a substantial change in circumstances."); *id.* § 598.21(9) ("[A] substantial change of circumstances exists when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines established pursuant to subsection 4 or the obligor has access to a health benefit plan, the current order for support does not contain provisions for medical support, and the dependents are not covered by a health benefit plan provided by the obligee . . . ."). Thus, it is necessary to consider any statutes that may provide authority for a court to modify a dissolution decree when a party seeks modification, including modification of child-support provisions for a college-aged child.

Prior to July 1, 1997, Iowa did not have a specific statute to determine each parent's contributions to their children's college education. Instead, our legislature defined child "support" under section 598.1(6) to generally include support of a child between the ages of eighteen and twenty-two who was a fulltime college student. *Id.* § 598.21(6) (1995). This definition permitted the court to impose a child-support obligation on the noncustodial parent in the event the child pursued a postsecondary education as a fulltime student.

In 1997, the legislature amended section 598.1(6) to remove the postsecondary-support clause from the definition of support, redefined

support to terminate at age nineteen, and enacted a separate statute to provide for a postsecondary education subsidy by both parents. 1997 Iowa Acts ch. 175, §§ 185, 190; *accord In re Marriage of Mullen-Funderburk*, 696 N.W.2d at 609 (discussing the amendments).

We considered the operation of the amended statute and subsidy provision in *In re Marriage of Sojka*, 611 N.W.2d 503 (Iowa 2000). In *Sojka*, a parent sought to use the postsecondary-education-subsidy statute to modify a pre-1997 decree that provided for continued monthly support for a college-aged child, as well as payment of a portion of the tuition, room and board, and other college expenses. *Sojka*, 611 N.W.2d at 504. We held the postsecondary-education-subsidy statute did not apply retroactively to permit modification of college-support provisions of a dissolution decree entered prior to the effective date of the statute. *Id.* at 505. However, in 2002, our legislature enacted section 598.21(5A)(*e*) to specifically authorize courts to retroactively apply the postsecondary-education-subsidy statute to modify prior decrees that imposed a support obligation for college expenses. *See* 2002 Iowa Acts ch. 1018, § 17 (adding subparagraph (*e*), which provides, "A support order, decree, or judgment entered or pending before July 1, 1997, that provides for support of a child for college, university, or community college expenses, may be modified in accordance with [section 598.21(5A)]." In recently commenting on the effect of this amendment, we stated, "any decree providing for support of a child in college entered before July 1, 1997, is subject to modification." *In re Marriage of Goodman*, 690 N.W.2d 279, 283 (Iowa 2004) (citing Iowa Code § 598.21(5A)(*e*) (2003)).

In this case, the district court and the court of appeals rejected all of the grounds James raised to support a modification of the child-support provisions of the original decree, including the ground that the

enactment of the postsecondary- education-subsidy statute and the subsequent declaration by the legislature that the statute applies to decrees entered prior to July 1, 1997, supported modification. Interpreting our recent holding in *In re Marriage of Rosenfeld*, 668 N.W.2d 840 (Iowa 2003), Bonnie claimed the postsecondary-education-subsidy statute did not apply to allow modification in this case because the original decree established the support obligation for Joel's college expenses. The district court and the court of appeals agreed with this interpretation.

In *Rosenfeld*, we determined that the postsecondary-education statute applied to a modification action brought after July 1, 1997 to establish support for a college-aged child when the original pre-1997 decree did not establish any level of college-aged educational support. *See Rosenfeld*, 668 N.W.2d at 847 ("Iowa Code section 598.21(5A) is nevertheless applicable because the court did not fix college expenses prior to the enactment of [section] 598.21(5A)." (Citation and footnote omitted.)). Bonnie, however, interpreted *Rosenfeld* to mean that the flipside of our holding was also true—that the postsecondary-education-subsidy statute would *not* apply if the pre-1997 decree *did* set college-aged support. In accordance with this reasoning, Bonnie argued that James cannot use the postsecondary-education-subsidy statute to change the support provisions under the original decree in this case to reflect the provisions of the postsecondary-education-subsidy statute because the original decree in this case, unlike the decree in *Rosenfeld*, set the support obligation for James while Joel was in college.

We think Bonnie's argument misreads *Rosenfeld*, and fails to properly apply the postsecondary-education-subsidy statute to permit modification of the child-support provisions of the decree in this case. In

*In re Marriage of Mullen- Funderburk*, we explained that the postsecondary-education-subsidy statute applied in *Rosenfeld* because the original pre-1997 decree did not establish any level of college-aged educational support, and the issue was being decided for the first time after the enactment of the statute. *In re Marriage of Mullen-Funderburk*, 696 N.W.2d at 610-11 (citing *In re Marriage of Rosenfeld*, 686 N.W.2d at 848). In other words, subparagraph (*e*), providing for the retroactive application of the statute, was not implicated in *Rosenfeld* because the absence of a provision for college-aged support in the original decree made the action an original adjudication. *Id.* at 611. Thus, the postsecondary-education-subsidy statute applied to establish a subsidy. *See id.* (explaining that original adjudications of college-aged support "should be based on both the facts and the law in existence when the determination is made"—i.e., section 598.21(5A), and do not require a substantial change in circumstances). However, the existence of a provision for college-aged educational support in an original decree does not mean by implication that the subsidy statute does *not* apply. This implication ignores the clear legislative intent to permit modification of prior decrees based on the subsequent change in the law. *See* Iowa Code § 598.21(5A)(*e*) ("A support order, decree, or judgment entered or pending before July 1, 1997, that provides for support of a child for college, university, or community college expenses may be modified in accordance with this subsection."). The result is that the postsecondary-education-subsidy statute, section 598.21(5A), applies whether or not the original decree provided for college-aged support. If it *did*, subsection (5A) applies by virtue of subparagraph (*e*). If it did *not*, subsection (5A) applies because college-aged support is an original adjudication.

We recognize the language of the statute provides that the postsecondary education subsidy applies retroactively to modify decrees entered prior to July 1, 1997 that provided for support of a child for college "expenses." *Id.* Thus, the subsidy statute can only be used to modify child-support provisions in decrees for college expenses. The original decree in this case did not specifically designate that the continued support after high school was for college "expenses." However, we think the support provision was nevertheless the type of provision the legislature wanted to be covered under the retroactivity provision, subparagraph (*e*). Provisions in a divorce decree that extend a child-support obligation while the child is in college necessarily consider expenses associated with attending college. *See id.* § 598.21(4)(*a*) (stating that child support is for the "reasonable and necessary" expenses of a child). This approach is also consistent with our pronouncement in *In re Marriage of Goodman* that the retroactivity provision applies to pre-July 1, 1997 decrees "providing for support of a child in college." *See In re Marriage of Goodman*, 690 N.W.2d at 283.

We therefore reverse the judgment of the district court insofar as it denied modification of child support by refusing to apply the postsecondary-education-subsidy statute, and remand the case to the district court to eliminate James's child-support obligation and to determine whether there is good cause to establish a postsecondary education subsidy for Joel under the law and the facts now in existence. *See* Iowa Code § 598.21F(1) (Supp. 2005) ("The court may order a postsecondary education subsidy if good cause is shown."); *see also In re Marriage of Mullen-Funderburk*, 696 N.W.2d at 511 (stating that determinations of postsecondary education subsidies "should be based

on both the facts and the law in existence when the determination is made").

We recognize that the application of the postsecondary-education subsidy statute necessarily results in a termination of the prior support obligation. The legislature intended the standard under section 598.21(5A) and the new definition of "support" under section 598.1(9) to apply retroactively to pre-July 1, 1997 decrees. Thus, if the district court on remand finds no good cause to establish a college subsidy, the prior decree must nevertheless be modified to eliminate the existing child-support obligation under the decree. If the district court finds good cause for a subsidy, then the terms of the subsidy modify and replace the existing child-support provision of the decree.

James has asked that the termination of his child-support obligation be made retroactive to August 21, 2004, three months after he served Bonnie with his original notice and petition for modification. *See* Iowa Code § 598.21(8) (stating child-support obligations "may be retroactively modified only from three months after the date the notice of the petition for modification is served on the opposing party"). We leave this issue to the district court on remand. We also leave it to the district court to determine any claim of reimbursement for support not given to Joel by Bonnie.

## IV. Overpayment

One final issue remains for our consideration. The court of appeals determined that James was not entitled to a credit for the overpayment of monthly support after Nicole married, and it reversed the district court modification decree insofar as it granted James a credit of $3457 against future support payments.

"Courts generally do not allow a credit to the obligor spouse for voluntary expenditures made on behalf of the child in a manner other than that specified by a decree." 24A Am. Jur. 2d *Divorce and Separation* § 1067, at 474 (1998); *accord Harner v. Harner*, 434 N.E.2d 465, 468 (Ill. App. Ct. 1982) ("The general rule is that payments made for the benefit of children which are voluntary and not pursuant to a divorce decree may not be credited against other amounts due under the decree."); *In re Marriage of McCurnin*, 681 N.W.2d 322, 328 (Iowa 2004) (holding obligor was not entitled to credit for overpayment of support because he was a volunteer); *Bradford v. Futrell*, 171 A.2d 493, 497 (Md. 1961) (stating the obligor "will not be credited for payments made when he unnecessarily interposed himself as a volunteer and made payments direct to the children of his own accord"); *Webb v. Webb*, 475 S.W.2d 134, 136 (Mo. Ct. App. 1971) (" 'Decrees for child support should be strictly complied with and credit should not be allowed for overpayments voluntarily made.' " (quoting *Wills v. Glunts*, 151 S.E.2d 760, 762 (Ga. 1966))); *Griess v. Griess*, 608 N.W.2d 217, 224 (Neb. Ct. App. 2000) ("The general rule appears to be that no credit is given for voluntary overpayments of child support, even if they are made under a mistaken belief that they are legally required."); *Horne v. Horne*, 239 N.E.2d 348, 350 (N.Y. 1968) ("[P]ayments made by a father to or for the benefit of his children voluntarily and not pursuant to a divorce decree may not be credited by him against other amounts due and owing under the decree."); *Newton v. Newton*, 118 S.E.2d 656, 659 (Va. 1961) ("[I]t is the obligation of the divorced husband to pay the specified amounts according to the terms of the decree and that he should not be permitted to vary these terms to suit his convenience. . . . To permit him to increase the amount of the specified payments at one time, reduce them at another, and require an

adjustment of the differences in the future, would lead to continuous trouble and turmoil."); Robert A. Brazener, *Right to Credit on Accrued Support Payments for Time Child is in Father's Custody or for Other Voluntary Expenditures*, 47 A.L.R.3d 1031, 1037 (1973) ("Generally speaking, a father is not entitled to credit against arrearages for overpayments in support money which he made to the mother."). *See generally* Alice Wright Cain, *Right to Credit on Child Support for Previous Overpayments to Custodial Parent for Minor Child While Child Is Not Living with Obligor Parent*, 7 A.L.R.6th 411 (2005). Normally, exceptions are made only "when the equities of the circumstances demand it and when allowing a credit will not work a hardship on the minor children." *Griess*, 608 N.W.2d at 224 (citations omitted); *see also* 24A Am. Jur. 2d *Divorce and Separation* § 1068, at 476-77.

James testified he overpaid because he "wanted [his] son to continue to have the same standard of living he had had before." It was undisputed that James knew Nicole married, knew his support obligation was $495 per month after Nicole married, and he knew he was overpaying his support. *See Palagi v. Palagi*, 627 N.W.2d 765, 774 (Neb. Ct. App. 2001) (equity did not demand giving obligor credit for overpayment of support when he "knowingly and voluntarily" overpaid and did not view the overpayments as "a 'burden,' but, rather, he was predisposed all along to fund [his daughter's college education"). This is not the kind of case in which courts normally grant an exception to the general no-credit-for-voluntary-overpayment rule to do equity, and we see no reason to make an exception in this case. *See, e.g., Griess*, 608 N.W.2d at 224-25 (exception applicable when "[b]oth parties' attorneys in the original modification action had a hand in producing the erroneous calculation of child support," and granting a credit would "not work a

hardship on the children"); *In re Marriage of Olsen*, 593 N.E.2d 859, 865 (Ill. App. Ct. 1992) ("It is obvious that the parties mutually misunderstood the marital agreement provision and that Mr. Olsen paid, in good faith, child support from both his bonuses and dividends, believing that he was required to do so by the 20% provision."); *In re Marriage of Tollison*, 566 N.E.2d 852, 854 (Ill. App. Ct. 1991) (exception applicable when "the overpayment was a result of a court wage deduction order," and that the obligor filed early on during the period of overpayment "a motion for clarification wherein he indicated he had been seeking clarification of the correct amount owed but to no avail," which should have put the obligee "on notice that [the obligor] was not waiving any rights and to preclude any reliance on her part on the overpayments"); *Jackson v. Jackson*, 209 S.W.2d 79, 80 (Ky. 1948) (father allowed credit for paying daughter's private school tuition when "the child would lose the credits she had earned if removed at that time and placed in a public school"; father "paid the tuition for the remainder of the term rather than cause the child the inconvenience and loss of credits occasioned by a change of schools"; the payment "was made under compulsion of circumstances created by [the mother]"); *Goodson v. Goodson*, 231 S.E.2d 178, 182 (N.C. Ct. App. 1977) (remanding for trial court to balance equities in light of these guidelines: "Credit is more likely to be appropriate for expenses incurred with the consent or at the request of the parent with custody. Payments made under compulsion of circumstances are also more likely to merit credit for equitable reasons. The medical payments for Scott's tonsillectomy and related treatment would seem to fall within this category."); *see also* Cain, 7 A.L.R.6th at §§ 5-10 (listing cases in which credit allowed); Brazener, 47 A.L.R.3d at §§ 4-7 (same). Accordingly, we reverse the portion of the district court

judgment that granted James a credit for the overpayment of child support.

### V.	Conclusion

The district court and the court of appeals erred by concluding that a postsecondary education subsidy was not permissible in this case. By its terms, section 598.21(5A) allows for a postsecondary education subsidy. We therefore vacate the decision of the court of appeals and reverse the judgment of the district court insofar as it denied termination of support and establishment of a postsecondary education subsidy. We also reverse the judgment of the district court insofar as it granted James a credit for overpayment of support. We remand the case to the district court for proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**