# IN THE COURT OF APPEALS OF IOWA

No. 13-1043
Filed May 14, 2014

IN RE THE MARRIAGE OF DAVID A. GODBER
AND BETTY K. MBUSI

Upon the Petition of
DAVID A. GODBER,
  Petitioner-Appellant,

And Concerning
BETTY K. MBUSI,
  Respondent-Appellee.

_____

  Appeal from the Iowa District Court for Linn County, Robert E. Sosalla, Judge.


  David A. Godber appeals the district court decree dissolving his marriage to Betty K. Mbusi.  **AFFIRMED.**


  Thomas Viner of Jacobson, Johnson & Viner P.L.C., Cedar Rapids, for appellant.

  Caitlin Slessor of Nazette, Marner, Nathanson & Shea, Cedar Rapids, for appellee.


  Considered by Potterfield, P.J., Bower, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**BOWER, J.**

David A. Godber appeals the district court decree dissolving his marriage to Betty K. Mbusi. Godber claims the district court should not have granted Mbusi physical care of their child, did not give proper consideration to a request for joint physical care, crafted a parenting plan and visitation schedule inconsistent with the best interests of the child, and abused its discretion in awarding Mbusi $9000 in attorney fees. We find the district court properly granted Mbusi physical care of the child after adequately considering the possibility of joint physical care. We also find the parenting plan and visitation schedule are in the best interest of the child, and the district court did not abuse its discretion in awarding Mbusi attorney fees. Accordingly, we affirm.

## I.      Background Facts and Proceedings

On November 22, 2011, David Godber filed a petition to dissolve his seventeen-month marriage to Betty Mbusi. At the time of the trial, in March of 2013, their child was twenty-one months old and living with Mbusi. The couple met through an online dating service while Godber lived in Iowa and Mbusi was living in California. They became engaged during Godber's first trip to California. The conflict in the relationship began almost immediately thereafter.

By the time the child was born, the parties' relationship had significantly deteriorated. Godber claims he was excluded from the delivery room and denied a wrist band used to have access to the child. Mbusi presented evidence showing hospital staff and a social worker were concerned with Godber's conduct, particularly the language he used when speaking to Mbusi. Hostile and abusive language is the hallmark of Mbusi's description of the marriage.

After the birth of the child, the parties intended to move into a home in Marion, Iowa. Due to a bed bug problem, Mbusi lived with her sister for a time while Godber alternated between their previous apartment and the home. The family then lived together in the Marion home for a short time before Mbusi moved out with the child.

Godber is an electrician and Mbusi is a nurse who primarily works weekends and cares for the child during the week. Initially, Godber cared for the child three nights a week. After a domestic assault by Godber, a protective order was entered and visitation was limited. Eventually the parties agreed Godber would have the child every other weekend and overnight each Wednesday.

## II. Standard of Review

As an equity action, we review the dissolution of a marriage de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We review the record anew, but give weight to the findings of the district court, especially on credibility determinations. *Id.* We will not disturb the district court's award of attorney fees absent an abuse of discretion. *In re Marriage of Rosenfeld*, 668 N.W.2d 840, 849 (Iowa 2003).

## III. Discussion

### A. Physical Care

Godber claims the district court should not have awarded Mbusi physical care.[1] He contends the district court improperly considered the factors found in

---

[1] Godber claims the district court awarded Mbusi "primary physical care." The term "primary physical care" does not appear in Iowa Code chapter 598 (2011), which only speaks of "physical care," as defined by section 598.1(7).

Iowa Code section 598.41(3) even though the parties had agreed to joint physical care.

Physical care means the right and responsibility to maintain a home for the minor child and provide for the routine care of the child. Iowa Code § 598.1(7). Joint physical care is an award of physical care where both parents have equal rights and responsibilities toward the child. Iowa Code §598.1(4). Legal custody is the right and responsibility to make legal, medical, educational, extracurricular, and religious decisions concerning the child. Iowa Code §598.1(5). Like joint physical care, joint legal custody grants both parents equal legal custody rights. Iowa Code § 598.1(3); *see In re Marriage of Fennelly*, 737 N.W.2d 97, 100–01 (Iowa 2007) (distinguishing legal custody from physical care). Godber and Mbusi were awarded joint legal custody, but Mbusi was awarded physical care.

When parents are awarded joint legal custody, the court is permitted to award joint physical care upon the request of either parent. Iowa Code § 598.41(5)(a). In their joint pretrial statement, the parties requested joint custody of the child. Each party requested physical care of the child. In the alternative, the parties requested an award of joint physical care. The district court granted Mbusi physical care of the child.

When considering the physical care of the child, the overriding concern is the best interests of the child. *See Fennelly*, 737 N.W.2d at 101. To determine who should be awarded physical care, the court is to consider the factors found in section 598.41(3) and those found in the case of *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *Fennelly*, 737 N.W.2d at 101. When joint

physical care is inappropriate, one parent must be chosen with the other being granted visitation rights. *Id.* Godber claims the district court should not have considered the factors found in section 598.41(3) because the parties agreed to joint legal custody. *See* Iowa Code § 598.41(4) (stating subsection 3 does not apply when the parents agree to joint custody). Godber is correct, but only insofar as section 598.41(3) applies to issues of custody. As discussed in *Fennelly*, the factors established in section 598.41(3) always apply to the determination of physical care, regardless of the agreement of the parties. *Fennelly*, 737 N.W.2d at 101. There is no presumption in favor of joint physical care. *Id.* If the court grants physical care to one parent over a request for joint physical care, it is required to explain why joint physical care is not in the child's best interests. Iowa Code § 598.41(5).

Upon our review of the record, and the factors found in section 598.41(3), we find joint physical care is not in the child's best interest and Mbusi was properly granted physical care. We agree with the district court that the parents' inability to effectively communicate with one another makes an award of joint physical care impossible. The parties, particularly Godber, have engaged in a history of verbal altercations, name calling, and disrespect. We find, as did the district court, that Godber is impulsive, controlling, manipulative and abrasive. We similarly find Godber's tendency to raise his voice, act out, name call, and shout down Mbusi do nothing to help the parties make joint parenting decisions.

The district court also relied upon a history of domestic abuse in determining physical care. There is a single documented incident of domestic abuse, resulting in a protective order. A single incident of domestic abuse is not

necessarily sufficient to establish a history of domestic abuse within the meaning of section 598.41(3)(j).  *See In re Marriage of Forbes*, 570 N.W.2d 757, 760 (Iowa 1997).  Even without a history of domestic abuse, we conclude the award of physical care to Mbusi is in the child's best interests as Godber has a tendency towards violent and derogatory verbal outbursts.  We give deference to the credibility determinations made by the district court that Mbusi is calmer, more rational, and more caring of the two.  We find Mbusi is more likely to support the child's relationship with Godber, and will better provide for the maximum health and social maturity of the child.  *See In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007) (describing the best interest standard).  We find the district court gave ample consideration to the request for joint physical care and properly decided the issue.

### B.    Parenting Plan and Visitation

Godber also claims the district court erred in modifying the visitation plan and visitation schedule agreed to by the parties.  The plan established in the decree represents a reduction in time for Godber as compared to the earlier temporary plan.  Specifically, in the decree Godber is given an evening visit each Wednesday, as opposed to an overnight visit.  We agree with the district court that the plan established in the decree is in the best interests of the child.  It allows for sufficient time with each parent while preserving stability in the child's life.  We reiterate the district court's statement that the parenting plan and visitation schedule simply establishes a minimum amount of visitation, which can be increased by agreement of the parties.

**B.      Attorney Fees**

Mbusi was awarded $9000 in attorney fees.  The district court based the award on Godber's ability to pay and the large increase in the value of Godber's 401(k) plan during the marriage, which he was awarded.

"Trial courts have considerable discretion in awarding attorney fees." *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994).  An award of fees must be fair, reasonable, and based upon the ability of the parties to pay.  *Id.*  Godber earns $62,847 per year, while Mbusi earns $53,950 per year.  During the course of the marriage, Godber's 401(k) account grew by about $23,600, all of which Godber will retain.  We find the district court did not abuse its discretion in awarding $9000 in attorney fees.

**AFFIRMED.**