# IN THE COURT OF APPEALS OF IOWA

No.13-1462
Filed July 16, 2014

**IN RE THE MARRIAGE OF NICOLE CLEVERINGA
AND DARIN L. CLEVERINGA**

**Upon the Petition of
NICOLE CLEVERINGA,**
      Petitioner-Appellant,

**And Concerning
DARIN L. CLEVERINGA,**
      Respondent-Appellee.
_____

Appeal from the Iowa District Court for Sioux County, Jeffrey L. Poulson, Judge.

Nicole Sava (formerly known as Nicole Cleveringa) appeals the decree dissolving her marriage to Darin Cleveringa. **AFFIRMED AS MODIFIED AND REMANDED.**

Matthew G. Sease of Kemp & Sease, Des Moines, and Randall G. Sease of Sease Law Firm, Hartley, for appellant.

Randy L. Waagmeester of Waagmeester Law Office, P.L.C., Rock Rapids, for appellee.

Heard by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**BOWER, J.**

Nicole Sava (formerly known as Nicole Cleveringa) appeals the decree dissolving her marriage to Darin Cleveringa. Nicole claims she should have been granted physical care of the parties' two minor children and the district court should have granted her request for attorney fees. Both parties request appellate attorney fees.

We modify the decree and grant Nicole physical care of the children. We remand this matter to the district court for determination of Darin's child support obligation. We decline to disturb the district court's ruling on attorney fees. Nicole's request for appellate attorney fees is granted in part.

## I.    Background Facts and Proceedings

Nicole, a native of New York, married Darin, a native Iowan, on August 16, 2003. Nicole filed a petition for dissolution of marriage on March 12, 2012. The case proceeded to trial on August 28, 2013, and a decree of dissolution was entered on August 29, 2013.

At the time of trial, Darin was an active-duty Marine stationed in Yuma, Arizona, where he lived with his girlfriend, Michelle Clark, and her children. Nicole resided in New York with her boyfriend, Jason Mingo. She is a former Marine and the parties met while they were both stationed in Barstow, California. Both of the parties' children were born while they were in Barstow. Nicole left the Marines after her initial four-year enlistment; Darin intends to remain in the military until he has served twenty years.

As is typical of military families, the parties led something of a nomadic lifestyle. After leaving Barstow, the family lived in Hawaii and, later, in Plato, Missouri. Darin was also deployed twice to Iraq. During and following the second deployment, while the parties were in Plato, the marriage began to unravel. By all accounts, both parties engaged in destructive behavior during this time, including alcohol abuse. The alcohol abuse resulted in a pair of serious incidents which reflect negatively on both parties. During the first incident, Nicole hit Darin, giving him a black eye. He responded by twisting her arm, resulting in a shoulder injury and a broken clavicle. Nicole attempts to present this incident as an example of Darin's propensity for violence; however, the record shows both parties were at fault. During the second incident, Nicole started a fight with another individual after she had been drinking. In an attempt to break up the fight, Darin fired his military weapon into the air. He was professionally disciplined for his actions.

When Darin was transferred from Missouri to Arizona, Nicole and the children moved to Rock Valley, Iowa, near Darin's family. Despite purchasing a home together in the area, the move was temporary. In 2012, Nicole and the children moved to New York.

In May 2012, the parties began discussing a temporary solution regarding custody and physical care of the children. Their temporary stipulation specified the children would be in Darin's care during the summer of 2012, returning to Nicole no later than August 25, 2012. The children traveled to Arizona to be with

Darin; however, he refused to return them as required by the stipulation.[1]  After Nicole filed a motion to enforce the temporary stipulation, a hearing on temporary matters was held on October 29, 2012.  The district court found Darin failed to return the children in violation of the temporary stipulation and ordered Darin to comply with the stipulation.

Upon return, the children lived with Nicole in Tarrytown, New York.  They attended school and, by all accounts, were happy and well-adjusted.  The children returned to Arizona in June 2013 to spend the summer with Darin.  After they left, Nicole moved to neighboring Dobbs Ferry, New York, to live with her boyfriend.  At the time of trial, the children had not yet returned to New York; if they had, they would have attended a different school in Dobbs Ferry.

The district court awarded the parties joint legal custody, but due to logistics, had to select one parent to provide physical care.  Finding both parents to be suitable providers, the court granted Darin physical care and granted substantial visitation to Nicole.  The court recognized Nicole had been the primary caregiver, but found Darin had made significant personal improvements and offered the children an opportunity to attend a familiar school.  Also, the court was impressed with the testimony of Michelle Clark, Darin's girlfriend.  The court noted it did not have the benefit of personally observing Nicole's boyfriend, although there was no reason to doubt his fitness to reside with the children.  The court ordered each party to pay their own attorney fees.

Nicole now appeals the district court's ruling on physical care.

---

[1] Darin claims he signed the temporary stipulation because Nicole was threatening to withhold the children from him if he refused.

**II.    Standard of Review**

As an equitable proceeding, we review the decree of dissolution de novo. Iowa R. App. P. 6.907.  Though we are not bound by the findings of the district court, we will give them weight.  *In re Marriage of Sjulin*, 431 N.W.2d 773, 776 (Iowa 1988).  "The decision to award attorney fees rests within the sound discretion of the court."  *In re Marriage of Rosenfeld*, 668 N.W.2d 840, 849 (Iowa 2003).  Absent a finding of abuse of discretion, we will not disturb the district court's decision.  *Id.*

**III.    Discussion**

**A.    Custody**

Nicole claims it is in the best interest of the children for her to have physical care, pointing to her history as the children's primary caregiver and her greater ability to provide a stable home environment.

Iowa's traditional and statutory child custody standard is "the best interest of the child."  *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007); *see* Iowa Code § 591.41 (2011).  This standard provides the necessary flexibility to take the unique facts of each case into consideration.  *Id.* at 696.  A non-exclusive list of factors used to determine the "best interest of the child" is found in Iowa Code section 598.41(3), with the primary factors being stability, continuity, and approximation.  *Id.* at 696-97.

Upon our de novo review of the record, we believe the best interest of the children is served by granting Nicole physical care.  The court gives stability and continuity considerable weight.  *Id.* at 700.  Likewise, following the principle of

approximation, the court generally allocates parents' custodial time in roughly the same proportion as the care the child was familiar with prior to the dissolution of the marriage. *Id.* at 697. The approximation principle helps ensure the unique structure of the individual family is preserved as much as possible in the child's new life. *See id.* at 697-98. The record shows that Nicole was the primary caregiver for the children during the marriage.

Nicole was honorably discharged from the Marine Corps six months after the birth of the couple's first child and became a stay-at-home mom until the couple's second child was two or three years old. When the children started school, Nicole was the parent responsible for picking them up, and she remained the primary caregiver. Darin was deployed twice in his career. Consequently, as is typical for many military families, Nicole became the sole caregiver during this time. Nicole also continued her role as primary caregiver through the couple's legal separation. In summary, with the exception of the time the children spent with Darin in Arizona, Nicole has consistently been their primary caregiver.

In contrast, Darin is up for re-enlistment and expressed uncertainty as to where his future employment, if any, would take him. Additionally, Darin continues to have an irregular schedule, working from 6:00 p.m. at night to 6:00 a.m. in the morning on a "two days on, two days off" schedule. Darin relies on his current girlfriend to watch his children while he is at work. *See In re Marriage of Gray*, No. 13-1351, 2014 WL 2431677, at *4 (Iowa Ct. App. May. 29, 2014) ("We also consider the parties' work schedules and their impact on the parties' abilities to care for [the child] fulltime."). Since Darin's girlfriend acts as a de

facto parent due to Darin's schedule, it is important to examine that relationship as well—"[i]f a parent seeks to establish a home with another adult, that adult's background and his or her relationship with the children becomes a significant factor in a custody dispute." *In re Marriage of Decker*, 666 N.W.2d 175, 179 (Iowa Ct. App. 2003).

The district court found Darin's girlfriend, Michelle Clark, to have good parenting skills and placed significant emphasis on Michelle as a stabilizing factor in Darin's life. However, we weigh more heavily our concern that the home environment Darin has established for the children "is premised upon the success of [his] current relationship, absent which a nomadic and unstable lifestyle may resume." *See In re Marriage of Hansen*, No. 13-0423, 2013 WL 5951219, at *2 (Iowa Ct. App. Nov. 6, 2013). In contrast, Nicole has taken solid steps to independently provide a stable home environment for the children.

In determining the "best interest of the child," additional relevant facts and circumstances are also considered. *Hansen*, 733 N.W.2d at 696. In particular, the court considers "under the whole record which parent can minister more effectively to the long-range best interests of the children." *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974). The court's goal is to award physical care of the children to the parent who can provide "the best environment possible for their continued development and growth" and who is most likely to foster physical and mental health and social maturity. *Hansen*, 733 N.W.2d at 700. In this context, we find the district court relied too heavily on Darin's description of his new family life. Darin paints a compelling picture, but upon

closer review, the record shows Darin tends to cast himself as the victim and lacks the ability to separate his children's needs and wants from his own. Though not determinative, the facts do speak to the parents' long-term ability to effectively "foster physical and mental health and social maturity." *Id.* at 695.

Additionally, "[t]he court shall consider the denial by one parent of the child's opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement." Iowa Code 598.41(1)(c). Darin denied Nicole physical contact with the couple's children for several months when he violated the temporary custody agreement. Darin refused to return the children to Nicole after they had spent the summer of 2012 with him. In ruling Darin had to return the children to the physical care of Nicole, the district court specifically noted:

> The children had been under Nicole's primary care until Darin exercised summer visitation and then wrongly refused to return them. He presents an environment to the children that is not as stable as Nicole's. He is cohabitating with his second girlfriend since separation. There is inadequate housing for two adults and six children. The children miss their mother, who has suitable housing and has arranged for their schooling. Darin should not be rewarded for violating the parties' agreement.

We find the district court placed too little emphasis on Darin's disregard for the temporary custody agreement. His disregard of the agreement shows his reluctance to fully and appropriately support the children's relationship with their mother.

For the reasons stated above, we find that the children's best interest is served by placing physical care with Nicole.

**B.    Attorney Fees**

Nicole claims the district court should have awarded her attorney fees because Darin earns a significantly larger salary and because the award would serve as a punishment for Darin's violating the temporary stipulation.   Both parties request appellate attorney fees.

District courts are given considerable discretion in ruling on a request for attorney fees.  *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994).  The court examines the relative ability of the parties to pay and any award must be fair and reasonable.  *Id.*  Despite Darin's greater income, we find no abuse of discretion in the court's ruling.  Additionally, we will not award attorney fees for past misconduct, particularly where that conduct is not the subject of this appeal and was adequately addressed by the district court at the appropriate time.

We decline to award Darin appellate attorney fees.  However, we award appellate attorney fees to Nicole.  Appellate attorney fees are discretionary.  *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006).   "Factors to be considered in determining whether to award attorney fees include: the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."   *Id.* (internal quotations omitted).   Nicole successfully appealed the physical care award, Darin has significantly greater income, and the ability to pay a portion of Nicole's appellate attorney fees.  We award Nicole $3000 in appellate attorney fees.

Costs of this appeal are taxed to Darin.

**AFFIRMED AS MODIFIED AND REMANDED.**