# IN THE COURT OF APPEALS OF IOWA

No. 25-0151
Filed October 15, 2025

**BRYAN MICHAEL LOYA,**
        Plaintiff-Appellant,

**vs.**

**CARLY JANE FLAWS n/k/a CARLY JANE COLLETTE,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Samantha Gronewald,

Judge.


        Bryan Loya appeals the order modifying legal custody and physical care of

his child.  **AFFIRMED.**


        Jonathon P. Tarpey of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

        Ande Skinner of Ramsey Law, P.L.C., West Des Moines, for appellee.


        Considered without oral argument by Greer, P.J., and Badding and

Chicchelly, JJ.

**CHICCHELLY, Judge.**

Bryan Loya appeals the district court order modifying legal custody and physical care of his child with Carly Flaws[1]. He argues the district court erred by (1) granting Carly sole legal custody, (2) denying his request for joint physical care, (3) denying his request for equal visitation time, (4) granting in part Carly's motion to reconsider, and (5) awarding Carly trial attorney fees. Upon our review, we affirm and award Carly $5735 in appellate attorney fees.

## I. Background Facts and Proceedings

Bryan and Carly were in a relationship for approximately two years. Their relationship was casual but became more serious when Carly found out she was pregnant with their child. D.D.L. was born in 2019. Bryan and Carly's relationship continued until 2021. During that time, Bryan and Carly lived together.

In October 2021, the parties filed a stipulated agreement to establish paternity, custody, visitation, child support, and related matters. The stipulation governed the relationship, and the parties co-parented well until spring 2022. Under the stipulation, the parties were awarded joint legal custody with the child placed in Carly's physical care.

In August 2023, Carly filed a petition for modification requesting sole legal custody and child support pursuant to the child support guidelines. The parties agree their co-parenting relationship became ineffective in spring 2022 with each blaming the other for the breakdown. In September 2023, Bryan filed a counter-petition for modification requesting joint physical care and child support.

---

[1] Carly is now known as Carly Collette.

The district court granted Carly's request for sole legal custody and physical care, adjusted the parties' visitation schedule, denied Bryan's request for joint physical care, and set child support under the child support guidelines. Carly moved to reconsider the provisions regarding communication, holiday schedules, and visitation. The court granted that motion in part and adjusted the parties' method of communication, holiday schedule, and visitation. Bryan filed a timely appeal.

## II. Standard of Review

We review child custody modification proceedings de novo. *See Christy v. Lenz*, 878 N.W.2d 461, 464 (Iowa Ct. App. 2016). While not binding on us, we "give weight to the fact findings of the trial court, especially when considering the credibility of witnesses." *Id.* (citation omitted).

## III. Discussion

### a. Legal Custody

First, Bryan argues the district court erred by granting Carly sole legal custody. "To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of the evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change." *In re Marriage of Winnike*, 497 N.W.2d 170, 173 (Iowa Ct. App. 1992). "The party seeking modification of a decree's custody provisions must also prove a superior ability to minister to the needs of the children." *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (citation omitted).

Joint custody arrangements are generally maintained for "parents who demonstrate they are able to put aside their differences for the sake of their child." *Id*. "On the other hand, modification is generally appropriate when shared custody provisions incorporated into the decree have not evolved as envisioned by either of the parties or the court or when the parents simply cannot cooperate or communicate in dealing with their children." *In re Marriage of Beasley*, No. 21-1986, 2022 WL 16985437, at *7 (Iowa Ct. App. Nov. 17, 2022) (cleaned up).

Here, we agree with the district court that Bryan is unable to cooperate and communicate regarding the child. The record is replete with disagreements, arguments, and name-calling leading to an inability to co-parent. Bryan's attitude can best be summarized in this text message to Carly, "I will parallel parent[2] [the child] and, when necessary, communicate with you about his well-being, activities, and school. Other than that, there is zero reason for you and I to ever contact each other." This parallel parenting relationship is not in the best interest of the child. *See id.* at *7 ("As a result of [the father's] preference for 'parallel parenting,' the parties did not have equal access to information and they did not participate equally in important decisions affecting the children.").

Further instances include Bryan refusing to engage in discussion about which activities the child would be allowed to participate in, refusing to allow the child to play with toys that came from Carly's house, and refusing to coordinate with Carly in areas requiring co-parenting such as parent-teacher meetings. At

---

[2] The district court found parallel parenting to be a parenting style where the parents operate with as little contact and communication as possible.

one extracurricular event, Bryan was recorded on video refusing to allow the child to hug Carly and telling her "it's my time" and "no one wants you here."

There have been instances of conflict during exchanges of the child including Bryan's refusal to coordinate exchanges and open hostility with Carly. On one occasion Bryan's partner made the child remove his Halloween costume in Carly's driveway and leave it on her front doorstep. Then, when Carly sent Halloween candy for the child's siblings at Bryan's house, the candy was returned with a note reading "[d]o not send things to our kids again."

Bryan's conflict stretches further than Carly. This record shows Bryan has created conflict at the child's medical appointments and daycare. These instances include Bryan refusing to give the child prescribed medication and refusing to be in the same room as Carly at a medical appointment. Further, we agree with the district court's findings that Bryan on several occasions used abusive language towards the child's daycare provider when disagreeing with policies.

This past school year, the parties had to seek judicial intervention because they were unable to agree on which school the child should attend. The parents' disagreement on fundamental issues such as schooling lends further support to the district court's modification decision.

Because of Bryan's disregard for the co-parenting relationship, we agree with the district court that granting Carly sole legal custody is appropriate and in the best interests of the child. In determining best interests, we consider the totality of the circumstances including the conduct of each parent. *See Winnike,* 497 N.W.2d at 174 ("In determining what is in the best interests of the child we can look to a parent's past performance because it may be indicative of the quality of the

future care that parent is capable of providing.").  The record paints a clear picture that Carly has shown a willingness to work with Bryan by communicating and consulting with him on all matters related to the child.  Ultimately, we find it is in the child's best interests to award Carly sole legal custody because Bryan is unwilling to cooperate in co-parenting.  *Harris*, 877 N.W.2d at 441 (finding the parents' ability to communicate and show mutual respect is an important factor in determining best interests).  A continuation of joint legal custody would leave the child in continued uncertainty and potential litigation around every parenting decision.  *See id.* at 444 (suggesting sole legal custody may be in the child's best interest when parents cannot cooperate on parental decisions).  So, we affirm the district court's award of sole legal custody to Carly.

### b.  Physical Care

Bryan also claims the district court erred by denying his request for joint physical care.  Because we affirmed modification of legal custody in favor of Carly, we need not address joint physical care because such arrangement is not authorized with sole legal custody.  *See* Iowa Code § 598.41(5)(a) (2024) (permitting a court to grant joint physical care "[i]f joint legal custody is awarded to both parents"); *In re Marriage of Cowger*, No. 22-1254, 2023 WL 6620127, at *3 (Iowa Ct. App. Oct. 11, 2023) ("Because Leslie was awarded sole legal custody, a joint-physical-care arrangement is not an option.").

### c.  Visitation

Third, Bryan argues the district court erred in denying his request for equal visitation.  "Liberal visitation rights are in the best interests of the children," and children "should be assured the opportunity for the maximum continuing physical

and emotional contact with *both* parents*."* *In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993); *accord* Iowa Code § 598.41(1)(a). "Although liberal visitation is the benchmark, our governing consideration in defining visitation rights is the best interests of the children, not those of the parent seeking visitation." *In re Marriage of Brainard*, 523 N.W.2d 611, 615 (Iowa Ct. App. 1994).

Overall, we find Bryan's current visitation schedule serves the best interests of the child, allowing him to have meaningful time with each parent. We further find the stability in the current visitation schedule to be in the best interests of the child. *See In re Marriage of Morrison*, No. 16-0886, 2017 WL 936152, at *5 (Iowa Ct. App. Mar. 8, 2017). And as the district court noted, this visitation schedule is a baseline which may be altered if Bryan and Carly can agree. *See Cowger*, 2023 WL 6620127, at *5.

### d. Motion to Reconsider

Fourth, Bryan argues the district court erred in granting in part Carly's motion to reconsider. Bryan urges reversal based on a procedural error because "Carly received improper additional review on the issues of cellphone communications with the minor child, winter break, spring break, and the removal of the right of first refusal from the Order to Establish Custody."

A rule 1.904(2) motion "is essential to preservation of error when a trial court fails to resolve an issue, claim, defense, or legal theory properly submitted to it for adjudication." *State Farm Mut. Auto. Ins. Co. v. Pflibsen*, 350 N.W.2d 202, 206 (Iowa 1984). We find the district court properly granted the motion where its modification order did not address aspects of the requested relief. It appropriately

denied those aspects that were improper for a rule 1.904(2) motion. So, we affirm the district court's ruling on Carly's motion to reconsider.

### e. Trial Attorney Fees

Fifth, Bryan argues the district court erred in granting Carly trial attorney fees. Iowa Code section 598.36 authorizes an award of attorney fees to a prevailing party in a modification proceeding "in an amount deemed reasonable by the court." This statute "gives the district court considerable discretion in determining whether the district court should award such fees." *In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999). In modification proceedings, "[w]hether attorney fees should be awarded depends on the respective abilities of the parties to pay," and "the fees must be fair and reasonable." *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). But "[t]o overturn the award, [Bryan] must establish that the trial court abused its discretion." *Id.* He has not done so.

The district court's award of attorney fees was a proper exercise of discretion. *See In re Marriage of Rosenfeld*, 668 N.W.2d 840, 849 (Iowa 2003) (declining to disturb a fee award to the prevailing party in the absent record evidence of an abuse of discretion). Because the district court did not abuse its discretion in awarding trial attorney fees, we affirm that award as well.

### f. Appellate Attorney Fees

Finally, both parties request appellate attorney fees. An award of attorney fees is not a matter of right but is a matter of discretion. *See Christy*, 878 N.W.2d at 469. "In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted). After considering the relevant

factors, we find Bryan is not entitled to appellate attorney fees in this case. An award of Carly's appellate attorney fees is appropriate based on the circumstances before us. Based on the attorney fee affidavit filed by Carly, we award Carly $5735 in appellate attorney fees.

## IV. Conclusion

We affirm the district court's decision in its entirety.

**AFFIRMED.**