# IN THE COURT OF APPEALS OF IOWA

No. 13-1944
Filed December 24, 2014

IN RE THE MARRIAGE OF MARY JANE STOCK
AND DUANE STOCK JR.

Upon the Petition of
MARY JANE STOCK, n/k/a MARY JANE CLAUSEN,
    Petitioner-Appellant,

And Concerning
DUANE STOCK JR.,
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Johnson County, Paul D. Miller, Judge.

Mary Jane Stock, now known as Mary Jane Clausen, appeals the district court's ruling distributing marital proceeds based upon the parties' 2007 dissolution decree. She contends the court's denial of her request to be reimbursed by Duane Stock for one-half of the amount she paid towards the parties' mortgage and its interest while the sale of the marital farm was pending was inequitable. **AFFIRMED.**

Sasha L. Monthei of Scheldrup Blades P.C., Cedar Rapids, for appellant.

Barbara A. Edmondson of Honohan Epley Braddock & Brenneman L.L.P., Iowa City, for appellee.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DOYLE, J.**

Mary Jane Stock, now known as Mary Jane Clausen, and Duane Stock married in 1975. They separated in 2005 and have been fighting ever since. Although the parties' marriage was dissolved in October of 2007, the terms of the dissolution decree and the distribution of marital-property proceeds are still in dispute.

On appeal, Mary Jane contends the court's distribution of marital proceeds was inequitable because it did not require Duane to compensate her for half of the mortgage payments and interest she solely paid on the parties' mortgage between the date of the dissolution decree in 2007 to the sale of the property in 2013. Upon our de novo review of the record, we agree with the district court's well-reasoned order denying Mary's request and find the court's ruling to be equitable. Accordingly, we affirm.

### I. Background Facts and Proceedings.

The procedural history of the case is well known to the parties, but the timing of certain factual events is critical to the overall equity analysis. We therefore set forth the following undisputed facts.

Following a trial in September 2007, the district court entered its decree dissolving the parties' marriage on October 30, 2007. The court noted in its decree that Mary Jane had requested that the parties' farm, which included the marital home, be awarded to her. However, Duane had asked that the farm be sold to pay off the parties' considerable marital debts. Mary Jane had valued the property at $353,000 and Duane valued the property at $400,000, based upon an offer made by an adjoining landowner, David Hodge. Ultimately, the court

agreed with Duane that the farm should be sold to pay off marital debts, and it expressly valued the property at $400,000. However, the court's order detailed the following specifics for the sale:

> The parties' [farm] . . . shall be sold. The property shall be placed on the market immediately. If not sold within [ninety] days, the property shall be listed with a realtor of the parties' choice.
>
> The proceeds from the sale shall first be applied to the mortgage, any back real estate taxes, and any other attendant expenses associated with the real estate. Joint marital debts set out in this decree shall next be paid from the proceeds prior to any division of the proceeds. Any remaining net proceeds should then be paid one-half to each of the parties.
>
> Mary Jane may continue to reside in the home pending its sale. She shall be responsible for the mortgage, insurance, and other related expenses on the property pending its sale. Both parties shall share responsibility for any back taxes on the real estate.
>
> Both parties are ordered to cooperate fully with the sale of the real estate parcels. Neither may unreasonably withhold approval of reasonable offers received. Either party found to have intentionally and unreasonably caused a delay in the sale of either property may be solely financially responsible for additional mortgage payments, taxes or other additional costs incurred because of the delay.

Mary Jane subsequently filed a motion to enlarge the court's ruling on November 9, 2007, asking the court to rule on issues not relevant here.

A few days later, Mary Jane proffered an agreement to Duane seeking to purchase Duane's interest in the farm. This proposed agreement valued the property at $400,000, pursuant to the court's valuation; however, Mary Jane's proposed agreement provided she would pay to Duane approximately $30,000, his remaining half of the equity in the home after all the marital debts listed to be paid in the dissolution decree were subtracted from the $400,000 valuation. The proposed agreement was silent as to how the parties' marital debts would be satisfied if Duane accepted her offer, but Mary Jane testified she was "offering to

make those payments and give [Duane] a release from the creditors." Duane refused Mary Jane's proposed agreement the same day, explaining he wanted to sell the farm "to whoever will pay the most." Duane believed at that time the adjoining landowner Hodge "may [have been] willing to pay more than $400,000. Therefore, at [that] point, [Duane was] not willing to execute any agreement with Mary Jane." Mary Jane rejected Duane's submission that the property be sold to the highest purchaser, stating "[t]he court valued it at $400,000. This is not a negotiation on price." Mary Jane's attorney advised Duane he did not believe Mary Jane would "agree to any sale to a [third] party nor [would] she agree to sell it for more than $400,000."

The court denied Mary Jane's post-trial motion on December 4, 2007. On December 6, Duane advised Mary Jane that he did not believe the dissolution decree gave Mary Jane the right to purchase the property for $400,000. Again, Duane indicated he had had discussions with Hodge and that Hodge was "willing to pay more than $400,000." It was suggested that if Mary Jane wanted to buy the farm, she "submit an offer. That offer [would] then be shared with [Hodge] to see if he wants to raise it, and a two-person auction should be held until such time as one of the parties has been successful."

On December 10, Mary Jane filed a motion requesting the court enter an order directing that the farm be sold to her pursuant to the terms of her originally proposed agreement, i.e., a purchase price of approximately $30,000 to Duane. On December 19, Mary Jane signed and submitted to Duane the agreement. The cover letter to Duane states the purchase price "subtracts from the debts owed, which Mary Jane is agreeing to either assume and have you released from

or pay." It also states it "expect[s] they will want to withhold the amount of money that you owe Mary Jane under the terms of the Decree from the $29,799.79 they are paying you." On December 26, Duane proffered to Mary Jane a revised proposed agreement to purchase the farm. The principal difference was that it provided Mary Jane was to pay the entire purchase price of $400,000 at closing and that the parties' joint marital debts would be paid from the sale proceeds. On December 31, 2007, Mary Jane filed notice she was appealing the district court's decree. Duane filed his notice of cross-appeal of the court's decree the same day.

On January 4, 2008, Duane's attorney notified Mary Jane's attorney that now that the parties had appealed the case, "[he didn't] think it [was] necessarily appropriate for [Mary Jane] to pick and choose the portions of the Decree that [Mary Jane] like[d] and those that [she did not like]." He stated he believed they were "in a situation where [they could] only move forward with both of [their] agreement. The trial court has lost its jurisdiction of this case." Shortly thereafter, Duane filed his response to Mary Jane's motion to compel the sale, arguing the district court was without jurisdiction to hear the matter because both parties had now filed appeals. Yet, on January 17, 2008, Duane advised Mary Jane by letter that he "believe[d] negotiations for the purchase of the farm by [Mary Jane had] broken down" and demanded the farm be listed for sale. Duane suggested an experienced farm realtor, Mike Gatens, be used and stated that if that realtor was not acceptable to Mary Jane, she should provide to Duane other realtor's names. Duane noted he believed farm land values had increased and

that the parties would likely net more than $400,000, even after paying the realtor.

Mary Jane replied to Duane's resistance, arguing the court retained the authority to enforce judgments during an appeal. She also stated she was not appealing the issue of the sale of the farm and the court's valuation, and she stated it was her belief that Duane was unlikely to appeal the issue, as he was the one who requested at trial that the farm be sold and valued at $400,000. Following a hearing, the court entered its order agreeing it lacked jurisdiction to decide the matter because the parties were appealing the court's division of property in the decree, which included its ruling in the decree that the farm be sold to pay the parties' marital debts.

After the district court's ruling, Duane, at the end of January 2008, submitted a proposal to Mary Jane to sell her the farm for $400,000, similar to his prior revised offer. The proposal stated Mary Jane would purchase the farm for $400,000, and the parties' debts would be paid off as set forth in the decree. The proposal also listed several conditions for selling the farm to Mary Jane, including that Duane be allowed to purchase any item on the list of items for auction in the original decree for the value set by the court in the decree. Mary Jane rejected Duane's conditions, and Duane refused to remove them, and no agreement was reached.

The appeal was transferred to this court, and the court filed its opinion on October 29, 2008, affirming the district court's decree as modified. *See In re Marriage of Stock*, No. 08-0013, 2008 WL 4724853, *1 (Iowa Ct. App. Oct. 29, 2008). We noted Mary Jane challenged the court's valuation of $400,000 on

appeal, asserting the $400,000 offer used by the district court to determine the farm's value was not valid because the offer expired two days after trial. Duane argued farmland values had been rising and that the district court correctly ordered it be placed on the open market. Although the district court had placed a valuation on the farm, we found no error as the district court directed how the parties were to sell the property—placing it on the market immediately, and if not sold within ninety days, it was to be listed with a realtor. We also quoted the district court's specific directions that the parties were to cooperate fully in the farm's sale. Procedendo issued December 4, 2008.

Shortly thereafter, Mary Jane sent Duane another offer to purchase the farm, this time for $380,000, "given the turn in the economy." However, like her previous offer, Mary Jane only offered to pay Duane his equity in the farm in the amount of $19,799.79. Again, Mary Jane's offer did not propose how the parties' outstanding debts would be resolved.

Duane rejected Mary Jane's offer at the end of December 2008. He advised Hodge was still willing to purchase the farm for $400,000, but Hodge had stated he would not bid any higher because Mary Jane was in the picture. Duane advised he was still talking to other people in the area who had expressed an interest in the farm.

In January 2009, Duane sent Mary Jane a letter stating he had been reconsidering her December 2008 offer. However, Duane stated her offer was too low, and he demanded that Mary Jane agree to enter into a listing agreement to sell the farm. He suggested using two known auctioneers, stating he believed either would agree to a two-percent commission fee.

No further communication between the parties or court action appears in the record until July 22, 2011, when Mary Jane filed her "motion for contempt and compel and requesting attorney fees." There, Mary Jane noted Duane had not complied with numerous provisions of the decree, including paying her the equalization payment ordered in the decree. She requested the court enter an order "requiring Duane to sign a quit claim deed transferring his interest in the marital home to [her]," and "to enter judgment against Duane in favor of [her] in the amount of $40,397.20, for one-half the mortgage payments, property taxes and insurance premiums paid by Mary Jane since November 2007." Mary Jane also asked that judgment be entered against Duane for numerous unpaid amounts due to her under the decree, such as her half of the crop proceeds, cattle proceeds, and counter cyclical payments. She also asked that she be awarded attorney fees. Mary Jane's affidavit attached thereto stated, concerning the sale of the farm, that after Duane rejected her December 2008 offer to purchase the farm for $380,000, Duane

> demanded that the property be listed with Dwight Duwa or Stan Yoder for a two (2) percent commission fee. However, Duane never took steps to list the [farm] with Mr. Duwa or Mr. Yoder, or anyone else to my knowledge. I did not attempt to list the house on my own since I have always been a ready and able buyer of the [farm]. I have not received any offers to purchase the [farm] since the Decree was entered. I am not aware of whether Duane has received any offers on the [farm] (aside from mine) since the Decree was entered. Since Duane refused to sell the [farm] to me in November of 2007, I have paid $62,253.95 in mortgage payments, $8,313.00 in property taxes, and $10,227.44 in property insurance. I am requesting that the Court order Duane to reimburse me for one-half of the mortgage, taxes and insurance payments I have paid since November of 2007.

Duane retained new counsel, and the hearing on Mary Jane's petition was continued. In October 2011, Duane filed his own motion to compel the sale of the farm, stating he had contacted two experienced farmland auctioneers and obtained a proposed contract for listing, but Mary Jane failed to respond. He requested the court enter an order compelling the sale with one of the auctioneers he had suggested. In December 2011, Duane filed a supplemental motion to compel the sale of the property, stating the parties had now agreed to use Mary Jane's suggested realtor to list and handle the sale. He alleged, however, that Mary Jane demanded the property be listed at $400,000, a price that was, by that time, far below the estimated fair market value. Duane asked the court to direct Mary Jane to sign the necessary documents to list the farm for its estimated fair market value.

On December 21, 2011, a hearing was held on the parties' dueling motions, and in June 2012, the court entered its order. The court found Duane not in contempt regarding sale of the farm. Noting farmland values had substantially increased since the date of the decree, the court stated the farm should be listed for sale with a realtor, with the goal being "to maximize the price received. The realtor will set the sale price after consultation with both parties. If the parties cannot agree on a listing price, the court will set the sale price." Concerning the $80,000 plus amount Mary Jane paid for the parties' mortgage and other expenses related to the farm, the court stated if the parties could not agree how to divide the net proceeds of the farm sale, including these expenses, the court would require Mary Jane "to submit, not just expense information, but income information concerning this property, and [it would] then determine the

appropriate division of proceeds." As to other amounts due Mary Jane from Duane under the decree, the court determined Duane still owed Mary Jane almost $100,000 for the equalization payment, her share of crop, cattle, and related proceeds under the decree. It concluded Mary Jane proved "beyond a reasonable doubt that Duane ha[d] willfully violated [several] paragraphs of the Decree," and it found Duane "in contempt of court for failing to abide by the terms of the Decree." The court ordered that Duane pay Mary Jane's attorney's fees of $6908.02 and five-percent interest on all amounts he owed her, except the equalization payment, whose interest was already set at ten percent. It set a hearing for consideration of sanctions in August 2012.

Thereafter, Duane complied in all respects, including paying her the amounts due under the decree plus the penalty interest and attorney fees. In August 2012, he filed a motion to enlarge and amend the court's prior ruling concerning the sale of the farm, alleging that Mary Jane had not cooperated with the sale. Although Mary Jane had signed the listing agreement with the parties' chosen realtor, she, without Duane's knowledge, told the realtor he could not put "for sale" signs on the property or advertise the sale. After Duane's attorney confirmed this and contacted Mary Jane's attorney, Mary Jane made an offer to the realtor to buy the property for $400,000. The realtor advised Duane of the offer, and on his attorney's advice, he declined to accept it. The listing agreement then expired. Based upon Mary Jane's "bad faith actions," Duane asked the court to order Mary Jane to sign a new listing agreement and that if her offer ended up being the only one, the property should be sold at auction, "in order to ensure a fair market price is obtained."

In September 2012, Duane filed an application for order for rule to show cause and request for attorney's fees, as well as a motion to compel the sale of the farm. He stated an offer had been made to buy the property for $651,000 and that he had accepted it, but Mary Jane did not sign the offer or make a higher counter offer, and the offer expired. He requested she show cause as to why she should not be held in contempt of court for violating the court's prior order concerning the sale of the property. He also requested Mary Jane be ordered to pay his attorney fees and all court costs.

Mary Jane subsequently resisted the motions. She noted that she was the one who took initiative to have the decree enforced in several respects, and she stated Duane made no efforts to sell the property until she filed to have the decree enforced. She pointed out the names of persons to sell the property suggested by Duane in 2008 were auctioneers, but that the decree did not provide that the property was to be disposed of by auction. She admitted she had not signed the $651,000 offer. However, she explained:

> The parties executed a listing agreement for the marital home on June 14, 2012. The agreed upon listing price was $576,600. A potential buyer . . . made an offer to purchase the property for the listing price of $576,600. Duane accepted that offer by signing the same. Mary Jane, knowing Duane accepted the price of $576,600, did not accept [that] offer but instead offered $577,600 to purchase the property. Mary Jane anticipated Duane would similarly accept her offer since it was $1,000 more than the [other] offer. Duane refused to accept Mary Jane's offer of $577,600 even though he previously accepted a lower offer. Mary Jane did not sign the latter . . . offer for the reasons set forth herein.

A hearing on Duane's motions was held in October 2012. Two days before the hearing, the offeror who had previously made the $651,000 offer increased his offer to $697,500. The court entered an order shortly thereafter

addressing only the issue of whether to order the parties to accept the $697,500 offer. The court stated it did "not consider Mary Jane's July 31, 2012, offer to purchase the property for $400,000 to be fair market value, nor realistic." Also, the court found nothing wrong with Mary Jane trumping the August 24, 2012 $577,600 offer by $1000 nor with the offeror's trumping her offer by $73,000 on August 31, 2012. The court again stated its intention that the parties obtain the highest possible purchase price for the farm, and it directed both parties to accept the $697,500 offer and execute the necessary documents to do so. The farm was then sold for $697,500.

In April 2013, the court entered an order stating the farm had been sold and that the proceeds were being held in trust. It noted the parties had numerous filings "regarding items they believe should be paid or not paid from [the sale] proceeds before distribution of the remaining balance to the parties." It directed the parties "to file a concise request detailing their position on what joint marital expenses should be paid from the net farm proceeds." The parties then filed their proposals for dividing the sale proceeds.

Mary Jane asserted Duane should be required to reimburse her for half of the payments she made on the parties' mortgage principal and interest, property taxes, and property insurance. She stated she had incurred over $76,000 in expenses,[1] in addition to the $26,000 she paid down on the mortgage's principal while the matter was pending, without any contribution from Duane. Because the decree only held one party responsible for the mortgage, taxes, and insurance if

---

[1] Her stated expenses were property taxes of $12,093.00, property insurance of $13,032.77, and mortgage interest of $51,108.72.

that party "intentionally and unreasonably cause a delay of the sale of the marital home," she stated:

> Duane suggests Mary Jane did not cooperate fully with the sale of the marital home and should be solely responsible for the mortgage, taxes, insurance and interest. Duane alleges he proposed a realtor be hired in January 2008 but Mary Jane never responded. Actually, Mary Jane submitted an offer to purchase the property on January 30, 2008, which Duane refused. Notwithstanding, neither party until recently took any action to [sell] the marital home to a third party. Duane had no problem sitting back and waiting while the value of the marital property increased exponentially. It was Mary Jane that finally filed an action with this Court regarding the sale of the marital home. Mary Jane has paid thousands of dollars to keep the property insured, out of foreclosure, and the taxes up to date. Reimbursing Mary Jane out of the proceeds simply has the effect of holding Duane equally responsible for the costs to maintain the marital home following the Decree. If Duane is not required to contribute half of the costs to maintain the marital home, he should not receive any of the proceeds that resulted from the $297,500 increased value of the marital home.

Duane resisted Mary Jane's request for reimbursement, and he sought reimbursement for numerous items of marital property he claimed Mary Jane still possessed or had sold.

On October 24, 2013, the court entered its ruling addressing the remaining financial issues. The court stated, "[w]hen the issue is valuation or disposition of personal property involved in this dissolution, I find that neither party is credible, as the sole goal of each is to cause as much harm or grief to the other side as possible. Neither party has clean hands." Nevertheless, the court found that Mary Jane "was primarily responsible for the delay in the sale" of the farm. Although the delay ultimately worked to the parties' benefit, the court found Mary Jane she had refused to accept the offer of $697,500, forcing the court "to order her to accept this offer under the threat of contempt of court sanctions for failure

to do so." Additionally, the court found "[s]he also enjoyed the use of this property throughout that timeframe by continuing the farm operation, residing in the residence, and, presumably, obtaining a mortgage interest deduction on her personal tax returns." The court expressly denied her request that Duane pay half of the mortgage interest she paid of $51,108.72 from 2008 to 2012, though it found it "equitable to allow her a credit for the property taxes paid during this timeframe ($12,093) and for a credit of one-half of the amount paid by her for property insurance ($6516.38) for the same time period."[2] The court did not expressly address her request for reimbursement for the actual mortgage principal payments of $26,378.27. However, in addressing Duane's request Mary Jane be held in contempt for her conduct in delaying the sale of the parties' farm, the court found:

> it hard to financially sanction Mary Jane for this conduct in view of these facts: (1) that the long delay increased the value of the sale price of the farm by almost $300,000; (2) that Duane has significantly financially prospered by this delay; and (3) that Mary Jane advanced and paid all of the mortgage, interest, tax and insurance payments for the years 2008 through 2012.

Additionally, as to Duane's claims concerning marital property allegedly in Mary Jane's possession, the court noted it had "specifically found that both parties' testimony regarding valuation of certain items was self-serving and not objectively verifiable." It found "that Duane's valuation statements lack credibility and that Mary Jane's position on what happened to these items and current location is probably accurate."

---

[2] We note the $12,093 figure is one-hundred percent of the property taxes paid, not one-half.

On October 31, 2013, Mary Jane filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) motion to enlarge the court's order, seeking the court to order reimbursement to her for the mortgage principal payments not expressly addressed in the court's prior ruling. Duane resisted, and the court on November 15, 2013, entered its ruling denying Mary Jane's motion to enlarge, finding her request for reimbursement for the mortgage principal payments should be denied for the same reasons it denied her request for the mortgage interest.

Mary Jane now appeals.

## II. Discussion.

On appeal, Mary Jane contends the court's ruling denying her request for reimbursement of half of the mortgage principal and interest payments made between the entry of the dissolution decree and the sale of the property was inequitable. She argues the court found both parties had unclean hands and were not credible. She also disputes the court's finding that she was solely responsible for the delay of the sale of the farm. She maintains she should not be required to shoulder the entire burden for the mortgage expenses and to require her to do so is unequitable.

In addition to resisting Mary Jane's contentions, Duane challenges the timeliness of her appeal. He asserts Mary Jane's 1.904(2) motion was filed for an improper purpose and should not be counted towards the necessary dates for filing her appeals. He requests appellate attorney fees. We address the parties' arguments in turn, starting with Duane's challenge of timeliness.

### A. *Timeliness of Appeal.*

A notice of appeal must be filed within thirty days. *See* Iowa R. App. P. 6.101(1)(b). However, if a timely and proper rule 1.904(2) motion is filed, the thirty-day period is tolled until the court enters a ruling on that motion. *Id.*; *see also Sierra Club Iowa Chapter v. Iowa Dep't of Transp.*, 832 N.W.2d 636, 640 (Iowa 2013). A rule 1.904(2) motion is improper if the "motion only seeks additional review of a question of law with no underlying issue of fact" or is merely "a rehash of legal issues raised and decided adversely." *Id.* at 641 (internal quotation marks and citations omitted).

Duane argues the district court's October 24, 2013 ruling decided Mary Jane was not entitled to be reimbursed for principal-mortgage payments in the amount of $26,378.27, and therefore her rule 1.904(2) motion was improper and did not toll the appeal filing period. We disagree. Although the issue had been properly raised by Mary Jane prior to the court's ruling, the court did not expressly address her request. Thus, in order to preserve the issue for appeal, a rule 1.904(2) motion to enlarge was required to be filed by her. Moreover, given the contentious relationship of the parties, there can be no question that had she not moved to enlarge the district court's ruling to address the issue, Duane would challenge the issue's preservation. Finding Mary Jane's rule 1.904(2) motion was not improper, her time for filing her appeal was tolled until the court ruled on the motion and consequently, her notice of appeal was timely filed. We therefore turn to merits of Mary Jane's appeal.

### B. Equitable Distribution.

"A property award should provide closure when possible, not prolong the dissolution process," *In re Marriage of Siglin*, 555 N.W.2d 846, 850 (Iowa Ct. App. 1996); that did not happen here. Though "a property division is generally not modifiable," "the district court retains authority to interpret and enforce its prior decree." *In re Marriage of Morris*, 810 N.W.2d 880, 886 (Iowa 2012). We review a proceeding to modify or implement a marriage dissolution decree subsequent to its entry de novo. *In re Marriage of Pals*, 714 N.W.2d 644, 646 (Iowa 2006).

While noting the appreciation in value of the farm during the delay actually worked to the benefit of both parties, the court determined it was Mary Jane's responsibility to bear the entire cost of the farm's mortgage and interest payments from 2008 through 2012. Mary Jane contends this was inequitable. Upon our de novo review of the record, we disagree.

The decree provided that Mary Jane "may continue to reside in the home pending its sale. She shall be responsible for the mortgage, insurance, and other related expenses on the property pending its sale." Further, the decree provided:

> Both parties are ordered to cooperate fully with the sale of the real estate parcels. Neither may unreasonably withhold approval of reasonable offers received. Either party found to have intentionally and unreasonably caused a delay in the sale of either property may be solely financially responsible for additional mortgage payments, taxes or other additional costs incurred because of the delay.

Mary Jane was on notice that she was responsible for the mortgage, insurance, and other expenses while she resided on the farm pending its sale. Furthermore, she was on notice she would be solely responsible for additional mortgage

payments, taxes, and other additional costs if she intentionally and unreasonably caused a delay in the property's sale. Although the district court found both parties were not credible and had unclean hands, the court found "Mary Jane was primarily responsible for the delay in the sale of the farmland." We have no reason to disturb this finding. The court further found "she enjoyed the use of this property throughout that timeframe by continuing the farm operations, residing in the residence, and, presumably, obtaining a mortgage interest deduction on her personal tax returns." To the extent Mary's request does not seek a modification of a property award, we cannot say that placing upon Mary Jane the burden of the mortgage principal and interest payments she paid during that time she exclusively used and enjoyed the property was excessive or inequitable. Consequently, we conclude the district court's distribution of marital proceeds was equitable.

### C. Appellate Attorney Fees.

Duane requests an award of appellate attorney fees. Appellate attorney fees are not a matter of right, but rest in the court's discretion. *In re Marriage of Oakland*, 699 N.W.2d 260, 270 (Iowa 2005). We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). We decline Duane's request. Costs on appeal are assessed to Mary Jane.

**AFFIRMED.**