# IN THE COURT OF APPEALS OF IOWA

No. 19-1427
Filed April 15, 2020

IN RE THE MARRIAGE OF CARL E. HOFFMEYER
AND ROBIN MARIE HOFFMEYER

Upon the Petition of
CARL E. HOFFMEYER,
　　　　Petitioner-Appellant,

And Concerning
ROBIN MARIE HOFFMEYER,
　　　　Respondent-Appellee.
_____

　　　　Appeal from the Iowa District Court for Palo Alto County, Don E. Courtney,

Judge.


　　　　Carl Hoffmeyer appeals the district court's denial of his application seeking

a credit for child support. **AFFIRMED.**


　　　　Sarah A. Reindl, Reindl Law Firm, PLC, Mason City, for appellant.

　　　　Jill M. Davis of Montgomery, Barry, Bovee, Steffen & Davis, Spencer, for

appellee.

　　　　Thomas J. Miller, Attorney General, and Jade Havermann, Assistant

Attorney General, for appellee State of Iowa, Child Support Recovery Unit.


　　　　Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**DOYLE, Judge.**

Carl Hoffmeyer appeals the district court's denial of his application seeking a credit for child support. Upon our review, we affirm.

### I. Background Facts and Proceedings.

In 1990, Carl Hoffmeyer petitioned the district court to dissolve his marriage to Robin Hoffmeyer, now known as Robin Glander. The Hoffmeyers had three minor children; their youngest child was born in 1990. Each parent sought physical care and custody of the children, with the non-custodial parent paying child support.

A dissolution trial was held in May 1991. Carl did not appear on the day of trial and his "attorney moved to continue the trial . . . because of [Carl's] unavailability. Apparently, [Carl was] in Texas, where he recently moved to accept permanent employment." The court overruled the motion, finding "no good cause appear[ed] to grant [Carl's] motion." The court noted the matter had been pending since July 1990, and it was clear Carl was aware of the trial date but had "simply elected to not be present." So the trial proceeded.

In its decree dissolving the Hoffmeyers' marriage, the court granted the parties joint legal custody of the children, with Robin designated as the primary physical caretaker. The court ordered Carl to pay Robin child support of $668 per month.

In January 2014, the State, through its Child Support Recovery Unit (CSRU), moved for declaratory judgment requesting that the amount of child support arrears be reduced to a court order. Attached to the motion was a computation of child support due from Carl to Robin from July 1991 to January

2008[1]—199 months total—at $668 per month less amounts Carl had paid over the years, leaving a balance due of $110,238.74. In a March 2014 order, the court affirmed Carl's child support delinquency was $110,283.74 as of January 8, 2014.

In August 2016, Carl filed an "Application for Credit for Child Support" in the dissolution case. Carl's application referenced the March 2014 order. In his application, Carl stated that two of his children had come to live with him full-time—one in 1993 and the other in 1995. He requested he "be given credit for child support owed for those periods of time that the children were in his control, and for such other and further relief."

The CSRU resisted the application, noting the Hoffmeyers' decree had neither been modified nor had Carl or Robin requested suspension of Carl's child support obligation under Iowa Code section 252B.20 or 252B.20A (2016). The CSRU argued Carl's application was, in effect, a request for entry of an order of satisfaction of the child-support debt, but requirements for such, in section 598.22A, were not met by Carl.

A hearing on Carl's application was held in October 2018. Carl testified his oldest child began living with him in 1993, the next oldest began living with him in 1995, and that Robin was aware of this. Carl and Robin's youngest child remained in Robin's care. Carl testified he paid some support over the years, stating the last time he "sent out a payment was 2012,"[2] but he had stopped because he had trouble finding work. He was unemployed at the time of the 2018 hearing. Carl

---

[1] The child support obligation ended in January 2008 when the youngest child emancipated.

[2] A State's exhibit shows a payment received in 2017.

was asked why he had not come back "for these hearing or whatever," and he answered, "I just never did." He testified he never knew he "could file an application to modify."

Robin also testified that two of their children had lived with Carl, and some of the back child-support accrued during months when those children were living with Carl. Robin testified she and Carl had talked about modifying the child-support obligation over the years. She "had papers drawn and sent down to him" to sign, but Carl did not sign or send the papers back. Carl asked another time that she sign the papers again, but she told him he should have papers "drawn up and send them to [her] and then [she] would gladly sign them. And they never did show up."

After the hearing, the court entered a ruling denying Carl's application. The court agreed with the CRSU that "section 598.22A provides the exclusive means to credit child support payments" and therefore the court lacked the authority to grant Carl's request. The court advised Carl "should have filed a modification pursuant to section 598.21C and obtained a court order modifying his child support order when the children began living with him."

## II. Discussion.

Carl now appeals the district court's ruling denying his application. On appeal, he asserts the district court could modify the child-support judgment "when necessary to do equity and ensure due process." He also argues he was deprived of due process when the CSRU "sought and obtained an enforceable judgment against him." In response, the State notes Carl did not make any claim or present any evidence on due process or his alleged lack thereof and submits error was not

preserved on the claim. The State also argues setting aside the declaratory judgment would not affect the amount Carl still owes under the dissolution decree, because neither he nor Robin ever sought to have it modified. Based on the decree, the State maintains Carl's obligation to pay monthly child support accrued until the youngest child turned eighteen and the past-due amount remains under the existing decree.

Our review is de novo. *See* Iowa R. App. P. 6.907 (stating equity cases are to be reviewed de novo, and other types of cases are reviewed for correction of errors at law).

There is no question Carl did not raise a due process claim before the district court. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (explaining error preservation rules require an issue to be both raised and decided before we will consider the issue on appeal); *see also In re Marriage of Hansen*, 886 N.W.2d 868, 871-72 (Iowa App. Ct. 2016). "Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal." *Taft v. Iowa Dist. Ct.*, 828 N.W.2d 309, 322 (Iowa 2013). Because Carl's due process argument was not raised or ruled on by the district court, it was not preserved for our review.

As to the district court's authority to decide the issue, we note that each child-support installment becomes a binding final judgment and lien when it comes due unless the dissolution decree states otherwise. *See In re Marriage of Shepherd*, 429 N.W.2d 145, 146 (Iowa 1988) (discussing, among other things,

*Gilliam v. Gilliam*, 258 N.W.2d 155, 156 (Iowa 1977), where the Iowa Supreme Court "stated the court possessed no authority to exonerate liability for any or all then past-due and accrued decretal support payments"). Additionally, in Iowa, there is a "policy of protecting the stability of court judgments and the vested interests of the parties." *Shepherd*, 429 N.W.2d at 147. Thus, once the rights of the parties have been established by decree, those rights, including any child-support obligations that have accrued, are vested and cannot be taken away by the court without statutory authority. *See Dier v. Peters*, 815 N.W.2d 1, 6 (Iowa 2012). Only Iowa Code section 598.21C(5), which allows a child-support obligation to be retroactively modified three months after the date the opposing party received notice of the modification petition, provides the district court authority to modify retroactively an accrued child-support obligation. *See also In re Marriage of Johnson*, 781 N.W.2d 553, 559 (Iowa 2010).

Though Carl's application does not specifically request the court to modify retroactively the accrued child-support obligation, the effect is the same. To provide Carl a "credit" for the time the two children lived with him would be the equivalent of the court rewriting the dissolution decree to state Carl was not obligated to pay support for certain months while the children were minors and living with him. There is no authority for the court to rewrite the terms of the decree now to modify retroactively the amount of support due. Carl was aware of his support obligation. If he wanted to change the decree, the onus was on him to seek a modification of the decree when the payments were accruing. He did not. The district court correctly concluded it was without authority to modify retroactively the amount of support due.

### *III. Conclusion.*

Upon our review, we agree with the State that Carl's due process argument was not preserved for our review because it was not raised or ruled on by the district court. We also agree with the State and district court that the court was without authority to modify retroactively the amount of support due. So we affirm the district court's ruling denying Carl's application.

**AFFIRMED.**

May, J., concurs; Vaitheswaran, P.J., concurs specially.

**VAITHESWARAN, Presiding Judge** (concurring specially).

I specially concur. The inequities of this case are palpable. The district court filed the dissolution decree in 1991, granting Robin Hoffmeyer physical care of the three children and ordering Carl Hoffmeyer to pay $668 per month in child support. One of the three children moved in with Carl in July 1993. A second child moved in with him in July 1995. Yet, the accruing monthly child support figure—$668—remained the same.

Shortly after the dissolution decree was filed and well into 1999, the Iowa Department of Human Services had the entire monthly amount of each support payment assigned to it by operation of law, based on Robin's receipt of public assistance. *See* Iowa Code § 252A.13. The department periodically terminated and re-initiated the assignments and periodically obtained income-withholding orders. In 2014, the child support recovery unit moved for a declaratory judgment that Carl was "delinquent in the amount of $110,283.74." The district court entered a judgment in that amount. To reiterate, the amount reflected a monthly child support obligation owing to Robin for three children, not one.

At a hearing on Carl's motion for a credit, Robin testified she told the department about the change in the physical care arrangement. She also testified that she mailed Carl documents to amend his child support obligation but received no response. Yet, in 1999, she notified the court of a "change of address for child support" without indicating that the two children had been out of her care for several years. And, at the hearing on Carl's motion for a credit, she acknowledged that the State's exhibit disclosing the child support owed to her was for periods of time that the two children were not living with her. When asked why she felt she was

owed the money, she stated, "Because there was a court order stating that he was to pay child support."

Equity might dictate relief under these circumstances. *See In re Marriage of Harvey*, 523 N.W.2d 755, 755 (Iowa 1994) (concluding "the doctrine of equitable estoppel bars a mother from recovering for past child support"); *In re Marriage of Yanda*, 528 N.W.2d 642, 644–45 (Iowa Ct. App. 1994) (applying the doctrine of equitable estoppel to preclude a mother from collecting a child support judgment where the father supported the child "during the time the judgment occurred" and the mother agreed not to collect support during the period); *In re Marriage of Weidauer*, No. 08-1293, 2009 WL 2170219, at *3 (Iowa Ct. App. July 22, 2009) ("The district court should have granted Mark's request for a credit on his official support payment record for the $22,750 in child support payments that he made directly to Karen."); *cf. In re Marriage of Pals*, 714 N.W.2d 644, 651 (Iowa 2006) ("This is not the kind of case in which courts normally grant an exception to the general no-credit-for-voluntary-overpayment rule to do equity, and we see no reason to make an exception in this case."). But, as inequitable as the facts appear, I agree with the district court and the majority that Carl failed to seek timely relief. He did not apply for a modification of the decree and, although the child support recovery unit's motion for declaratory judgment was served by mail at his last known address, he did not contest the motion. At the hearing on his motion for a credit, he testified he "never knew" he could file an application to modify the child support obligation and he "never knew" Robin might owe him child support, because he had "never been around . . . the court system to know that." But

"ignorance of the law is no excuse." *See Clark v. Iowa Dep't of Revenue*, 644 N.W.2d 310, 319 (Iowa 2002). Equities notwithstanding, I too vote to affirm.