## IN THE COURT OF APPEALS OF IOWA

No. 20-1610
Filed October 20, 2021

IN RE THE MARRIAGE OF JULIE M. NELSON
AND MICHAEL D. NELSON

Upon the Petition of
JULIE M. NELSON,
       Petitioner-Appellee,

And Concerning
MICHAEL D. NELSON,
       Respondent-Appellant.
_____

       Appeal from the Iowa District Court for Story County, James C. Ellefson,

Judge.


       A father of three appeals an order denying his application to modify child

support and ordering him to pay orthodontia costs for the youngest child.

**AFFIRMED.**


       Amanda Hassid of Pasley & Singer Law Firm, L.L.P., Ames, for appellant.

       Jessica Shannon of Baer Law Office, Des Moines, for appellee.


       Considered by Tabor, P.J., Greer, J., and Carr, S.J.*

       *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**TABOR, Presiding Judge.**

A 2005 divorce decree ordered Michael (Mick) Nelson to pay $873.14 per month to support his three children: L.N., M.N., and S.N. The decree also directed the support "shall be recalculated" when each child was no longer eligible based on "the then current Child Support Guidelines." Mick contends that "step-down provision is "self-executing." And now that all three children have graduated from high school, he claims his child support obligation should end. Mick appeals the district court's denial of a retroactive reduction. He also contests an order that he pay a portion of uncovered orthodontia expenses for S.N., the youngest child. Because the district court properly handled the child support and medical support issues, we affirm.

## I.    Facts and Prior Proceedings

Mick and Julie Nelson married in 1993, had three children, and divorced in 2005. The divorce decree placed physical care of the children with Julie and ordered Mick to pay support for each child until the age of majority or high school graduation.[1] The oldest, L.N., graduated in 2015; M.N. in 2017; and S.N. in 2020. Although the decree anticipated a change in Mick's child support obligation as each child left home, he did not seek recalculation until 2020.

That year, Mick filed a pro se request to end his obligation because the children no longer qualified for support. Julie answered and counterclaimed, asserting that she initiated a collection action because Mick "had missed or made

---

[1] Along with the decree, the court issued an order to Mick's employer requiring income withholding for the child support obligation. The court updated the income-withholding order when Mick's employer changed in 2008, 2011, and 2018.

incomplete child support payments." She argued his obligation should not be terminated until he paid his back support of over $16,000.[2] Julie also applied for a rule to show cause why Mick should not be held in contempt. In an accompanying affidavit, she alleged that Mick owed her $3144.90 for S.N.'s orthodontics treatment.

Through counsel, Mick answered Julie's counterclaim. In that filing, he alleged that his monthly support obligation dropped to $819.63 in 2015, and to $602.91 in 2017. He based those calculations on the parties' 2005 incomes. In June 2020, the court ordered Mick's support obligation for S.N. to terminate. The court clarified:

> There is an additional set of issues revolving around whether support for the first two children should have terminated automatically or not, and, if the amount of support should have been changed, which set of guidelines should have been used and what incomes should have been used.
> . . . .
> . . . Determination of whether there was a back child support obligation and, if so, what the amount of that back support obligation is presents both legal and factual issues that are too complex to be submitted in the limited amount of time that the court has on a court service day. That issue must be set for trial.

After that order, Julie filed her own clarification:

---

[2] In 2018, Mick—who had moved to California—petitioned to modify the decree to change then sixteen-year-old S.N.'s physical care from Julie to him. But he voluntarily dismissed that modification petition in 2019 before the court considered it. Julie testified that during mediation for that modification action they ran the numbers through the child support guidelines and "determined that he would actually have to pay more with both our incomes." But she did not pursue an increase in support because she "didn't have the money to start that course of action." In her June 2020 brief resisting the termination of child support, Julie asserted that Mick's salary had doubled since the decree was entered in 2005. As proof, she attached a 2018 statement from the University of California, San Diego, showing his gross annual earnings as $91,250. The 2005 decree showed Mick's gross annual earnings as $43,000.

[H]ad [Mick] sought a modification of child support when each of the prior children became ineligible, the guidelines at that time, along with the parties income in 2015 and 2017, would have been used to determine child support, which might have been higher or lower than the current amount of $873.14. Unfortunately, that was never done.

The district court set trial for October 2020. Two months ahead of that, Mick launched discovery. In response, Julie filed a notice stating that she had served her answers by email. About two weeks before trial, Mick moved to strike all objections to his discovery requests, to deem all matters admitted, to compel discovery responses, and for summary judgment on the contempt action. The motion complained that Julie's unsigned email responses violated Iowa Rule of Civil Procedure 1.422(1). Julie resisted those requests. The court considered the discovery fight at a brief hearing on October 19. Afterward, the court denied Mick's motions to strike all objections, to deem all matters admitted, and to compel, but reserved specific discovery matters for the October 22 trial.[3] At that trial, Mick and Julie were the only witnesses. Mick testified that he believed he had overpaid $1,219.62 based on the "step-downs" as the children graduated from high school. He alleged that when L.N. graduated in 2015, he and Julie agreed that his support payment would be "around 700 and something dollars for two children." But he agreed the billed amount remained $873.14 as stated in the decree. Julie testified that Mick owed a balance of $16,243.69 on his child support. She also asserted that Mick should reimburse his share of S.N.'s orthodontic treatment.

---

[3] On the eve of trial, Mick filed a brief resisting the contempt action. Mick acknowledged he was sometimes in arrears in his child support. But he claimed, "When his older children became ineligible to receive child support, . . . he continued paying the same amount as before in order to close the gap between what he owed and what he had paid."

The district court ruled that Mick owed $16,243.69 in delinquent child support. It rejected his argument that the child-support reduction provision in the decree was "self-executing." The court also found Mick liable for $2,501.40 in uncovered medical expenses for S.N.'s orthodontia. Offsetting those sums, Julie owed Mick $3,689.45 in missed payments toward student loan debt. So the court ordered Mick to pay Julie a net amount of $15,055.64. The court declined to hold Mick in contempt for failure to timely pay his child support, instead requiring income withholding to recoup the back support.

Mick appeals, raising three issues: child support, medical support, and alleged discovery violations.[4] He also seeks appellate attorney fees. Julie defends the district court ruling and likewise asks for appellate attorney fees.

## II.    Standard of Review

Because a proceeding to modify or implement a dissolution decree—subsequent to its entry—is tried in equity, our review is de novo. *In re Marriage of Pals*, 714 N.W.2d 644, 646 (Iowa 2006). Under that review, "we examine the entire record and adjudicate anew the rights on the issues properly presented." *In re*

---

[4] We address only two of those three issues. We decline to reach Mick's challenge to Julie's alleged discovery violations because he did not preserve error. True, in its October 21, 2020 ruling, the court rejected remedies that Mick promoted for the alleged violations. But the court reserved the crux of the discovery dispute for trial. For instance, the court held Julie's "failure to produce an item of evidence on the basis of an objection that had no merit may be the basis for a ruling against [her] on specific matters at trial." In discussing Mick's request for admissions, the court ruled that Mick could "raise this contention with respect to specific issues at trial." But because Mick did not object to Julie's trial exhibits that were the subject of the discovery dispute, he waived error. *See UE Loc. 893/IUP v. State*, 928 N.W.2d 51, 61 (Iowa 2019) (explaining "a party receiving a preliminary ruling that does not unequivocally decide an issue must do more to preserve the issue for appellate review").

*Marriage of Maher*, 596 N.W.2d 561, 564 (Iowa 1999). The district court has reasonable discretion in determining whether modification is warranted, and we will not disturb the exercise of that discretion unless there is a failure to do equity. *Id.* at 565.

### III. Analysis

### A. Child Support

Mick frames his first issue like this: "Do child support amounts ordered in family law decrees automatically step down once the child becomes ineligible for support pursuant to Iowa Code section[s] 598.1 and 598.21 [(2020)]? (Are step-downs 'self-executing?')" To counter, Julie argues their divorce decree did not "provide the necessary specificity to be self-executing."

We start with the language of the decree. Based on the parents' net monthly incomes in 2005,[5] the decree ordered Mick to pay $873.14 per month to support the three children. The decree also provided "that when [Mick's] obligation for child support reduces to two children and then to one child, the child support amount shall be recalculated based on the then current Child Support Guidelines."

Is this provision self-executing?[6] In other words, did Mick's child support obligation decrease when L.N. graduated from high school in 2015, and decrease again when M.N. graduated in 2017, without him taking any action to recalculate

---

[5] Mick's was $2951.81, and Julie's was $2153.89.

[6] For a definition of self-executing, both the district court and Julie looked to *Scheffers v. Scheffers*, which explained: "A self-executing order has been defined by this court as one which requires no act of a ministerial or other officer to put it into effect." 44 N.W.2d 676, 679 (Iowa 1950) (internal quotation marks omitted). Also helpful, an instrument is "self-executing" if it is "effective immediately without the need of any type of implementing action." *Self-Executing*, *Black's Law Dictionary* (11th ed. 2019).

the amount or have the amount recalculated? Mick insists the answer is yes. He argues when a child becomes ineligible for support under the definitions in Iowa Code section 598.1, "any award of support must cease." He relies on *In re Bisenius*, 573 N.W.2d 258, 261 (Iowa 1998), and *In re Swanson*, No. 05-1953, 2006 WL 3313896, at *2 (Iowa Ct. App. Nov. 16, 2006).

Disagreeing, Julie contends both cases are inapposite. Why? Because in *Swanson*, the decree established the support amount due when the father was no longer required to pay for one of the two children. 2006 WL 3313896, at *1 n.1. No recalculation required. Similarly, in *Bisenius*, the order provided that support for all children be based on a percentage of the father's income and set out the applicable percent based on the number of children qualifying for support. 573 N.W.2d at 259–60. Again, no recalculation necessary. In those cases, "self-executing" referred to the conditions triggering the child's ineligibility for support. *Id.* at 261; *Swanson*, 2006 WL 3313896, at *2. When those conditions were satisfied, the obligation changed—without any implementing action—into a new and predetermined obligation. By contrast, under the Nelsons' decree, when the conditions triggering a child support change occurred—a child turned eighteen or graduated from high school—someone, either the parties or the court, had to recalculate the amount based on updated child support guidelines unknown at the time of the decree.[7]

---

[7] Under Iowa law, child support guidelines must be updated at least every four years. Iowa Code § 598.21B(1)(a); *see also* 42 U.S.C. § 667(a). The Iowa child support guidelines changed several times as the parents' young children grew up and aged out of child support eligibility.

And Mick admits as much in his trial brief, "Without dispute, Julie or Mick had the opportunity to modify the support order at any time. Whether for strategic reasons or lack of interest, neither did so." Mick added: "At this late date, it is not possible to calculate [the support amount] according to the parties' income." Despite that admission, Mick argues "it is certain that [he] owes less than [Julie] argues, and less than the district court ordered. What is unknown is whether [Mick] owes anything at all." He places the burden of proof on Julie because she brought the contempt action. From there, he asserts she "put on no evidence" to show he owes support in arrears "after accounting for the step-downs." As his bottom line, he urges that her claim must be dismissed.[8]

On the burden question, Julie again disagrees. She contends Mick, as the obligor, had "an affirmative duty to seek formal modification of the support order" if he believed his obligation had changed. *Cf. In re Marriage of Belger*, 654 N.W.2d 902, 909 (Iowa 2002) (discussing offset for social security dependency benefits). We agree. The obligor parent cannot on their own reduce child support payments (or determine the customary payment makes up for arears) without requesting court approval. *See id.* ("This rule is consistent with the public policy that courts, not the parties, should fix the proper amount of child support."). And once Mick sought modification, his request was one dimensional. He asked to stop paying support because the youngest child was no longer eligible. Julie resisted, arguing his obligation should not end until he had paid in full. In that procedural posture, Mick had the burden to show he did not owe back support.

---

[8] Mick's argument overlooks the fact that the district court refused to hold him in contempt. So we are not reviewing the contempt ruling.

Still, Mick defends his self-help measure. He compares his situation to the obligor, Leonard, in *In re Marriage of Youngblut*, who independently calculated his lower child support obligation after the older of his two children graduated from high school—despite an ambiguous provision in the decree. No. 05-0807, 2006 WL 469786, at *2 (Iowa Ct. App. Mar. 1, 2006). A few months after Leonard started paying less support, he sought a declaratory judgment to verify the reduced amount was appropriate. *Id.* In arguing the step-downs in his own decree were self-executing, Mick reasons: "The actual calculations may be done promptly, as in *Youngblut,* or they may be done years later."

Problem is, years later, Mick did not do "actual calculations" of the amounts he owed under the language of the decree. He also did not ask for a declaratory judgment to interpret the meaning of the phrase "shall be recalculated" based on then current child support guidelines. In fact, Mick argued a belated calculation using the parties' accurate incomes and guidelines from 2015 and 2017 was now impossible. Accepting that as true, we have no way to know if Mick indeed overpaid. Perhaps using his higher income, which is double his 2005 income, he may have owed the same or more child support for two and then one child. And his professed belief that his overpayments went to back support is unavailing. "Generally speaking, a father is not entitled to credit against arrearages for overpayments in support money which he made to the mother." *See Pals*, 714 N.W.2d at 650 (citing Robert A. Brazener, *Right to Credit on Accrued Support Payments for Time Child is in Father's Custody or for Other Voluntary Expenditures*, 47 A.L.R.3d 1031, 1037 (1973)).

For purposes of fixing the level of payment for two children and then one child, the support language in the 2005 decree was not self-executing. Recalculating an equitable amount required knowledge of the parties' incomes in 2015 and 2017 and access to the updated child support guidelines. *See In re Marriage of Mullen-Funderburk*, 696 N.W.2d 607, 611 (Iowa 2005) (holding that "[w]here a decree has not established a fixed level of payment," the modified amount "should be based on both the facts and the law in existence when the determination is made"). Granted, Mick would have been able to show a change in circumstances. *See In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 332 (Iowa Ct. App. 2005) ("Clearly when a child support award is based on two qualifying children and one no longer qualifies, there has been a substantial change in circumstances."); *see also* Iowa Code § 598.21C(1). But he also needed to take some action to implement the recalculation. Because he did not do so, we find the district court properly calculated the amount of back support he owed to Julie.

### B.      Medical Support

We next consider the district court's determination that under the terms of the decree, Mick was indebted to Julie for $2501.40 in uncovered medical expenses. *See generally* Iowa Ct. R. 9.12(5) (the Iowa Child Support Guidelines regarding medical support). The Nelsons' decree ordered Julie to pay the first $250 per child per year in uncovered medical expenses. The parents were to split uncovered expenses beyond that initial $250 in proportion to their incomes, with Mick paying fifty-five percent and Julie paying forty-five percent. The decree

defined those expenses as including reasonably necessary orthodontia.[9]  The decree also required the obligee to "present a receipt" within thirty days of incurring the expense.

Mick contends Julie was not entitled to reimbursements for expenses she paid for S.N.'s orthodontia.[10]  He gives two reasons: (1) Julie did not timely provide him a receipt[11] and (2) the court's calculations are not supported by the record.  He questions how much of the expense was incurred after S.N. graduated from high school.

In defending the order, Julie rejects those reasons.  On timeliness, she points to an exhibit showing her attorney contacted Mick's attorney on January 8, 2019, providing the orthodontic payment plan and giving options for paying his share.[12]  Julie's payments into that plan started eleven days later.  She also

---

[9] We do not read Mick's brief as challenging whether the orthodontia work was medically necessary.  And one parent may recover funds for reasonable and necessary medical expenses even if the other parent has not consented to the child's treatment in advance.  *See In re Marriage of Demmer*, No. 99-0665, 2000 WL 378265, at *2 (Iowa Ct. App. Apr. 12, 2000) (rejecting father's claim "he should not be responsible for half the cost of orthodontic braces for the children because he was neither consulted before authorization of such treatment nor was it made clear to him whether braces constitute necessary medical and dental care").

[10] Julie contests error preservation on this issue, pointing out that Mick cites no legal authority to back his position.  *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").  We agree his lack of authority hinders our review, but opt to overlook his waiver and address the merits.  *See In re Est. of Boman*, No. 16-0110, 2017 WL 512493, at *14 n.22 (Iowa Ct. App. Feb. 8, 2017).

[11] Much of Mick's argument focuses on what he perceives as discovery violations by Julie.  Those claims do not excuse him from paying his share of the uncovered medical expenses.

[12] That information did not surprise Mick, who testified that L.N. told him around Christmas 2018 that she would be getting braces.

emphasizes that all of S.N.'s orthodontia expenses were incurred before June 2020.

A party may collect unpaid medical support—once a court has determined a dollar amount—by the same remedies available for the collection of traditional child support. Iowa Code § 598.22(7); *In re Marriage of Okland*, 699 N.W.2d 260, 267–68 (Iowa 2005). The obligee must prove they are entitled to the requested amount of support. *Id.* at 268. In our de novo review, we find Julie provided timely notice of the uncovered medical expenses to Mick in compliance with the decree. And substantial evidence supported the reimbursement amount ordered by the court. So we affirm the district court's order.

### C.    Appellate Attorney Fees

Both Julie and Mick request appellate attorney fees. Mick requests $4000. Julie requests $13,260 for the cost of defending the appeal. An award of appellate attorney fees is not a matter of right but rests within our discretion. *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997). In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision. *See id.* Considering all the relevant factors, and especially the information in the record that Mick is earning about twice as much as Julie, we grant Julie's request in part and order Mick to pay $8000 of her appellate attorney fees.

Costs are assessed to Mick.

**AFFIRMED.**